**Francis J. DWYER, Plaintiff-Appellant,**

v.

**Edward V. REGAN, Individually and as Trustee and Administrative Head of the New York State Employees Retirement System, Defendant-Appellee.**

**No. 850, Docket 84–7956.**

United States Court of Appeals, Second Circuit.

Argued March 7, 1985.
Decided Nov. 21, 1985.

Eileen M. Kelley, Albany, N.Y. (William F. Sheehan, Hinman, Straub, Pigors & Manning, P.C., Albany, N.Y., on brief), for plaintiff-appellant.

William J. Kogan, Asst. Sol. Gen., Albany, N.Y. (Robert Abrams, Atty. Gen., State of N.Y., Robert Hermann, Sol. Gen., Peter H. Schiff, Deputy Sol. Gen., Albany, N.Y., on brief), for defendant-appellee.

Before TIMBERS, NEWMAN and KEARSE, Circuit Judges.

KEARSE, Circuit Judge.

Plaintiff Francis J. Dwyer appeals from a final judgment of the United States District Court for the Northern District of New York, Roger J. Miner, *Judge,* dismissing his complaint, brought under 42 U.S.C. § 1983 (1982) against defendant Edward V. Regan, individually and as head of the New York State Employees Retirement System (the "Retirement System" or the "System"), for damages and equitable relief for the termination of Dwyer's employment without a prior hearing. The court dismissed Dwyer's complaint for failure to state a claim upon which relief can be granted "pursuant to *Hudson v Palmer,* [—— U.S. ——, 104 S.Ct. 3194, 3202–04, 82 L.Ed.2d 393 (1984)]; *Parratt v Taylor,* 451 U.S. 527 [101 S.Ct. 1908, 68 L.Ed.2d 420] (1981) and *Giglio v. Dunn,*" 732 F.2d 1133 (2d Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 328, 83 L.Ed.2d 265 (1984). On appeal, Dwyer contends that his complaint adequately stated a claim for violation of his due process right to a pretermination hearing. Although we conclude that the complaint is inadequate under the standard enunciated herein, and that certain of the relief requested by Dwyer would in any event be barred by the Eleventh Amendment to the Constitution, we remand the matter to the district court to give Dwyer the opportunity to allege facts sufficient to state a claim upon which relief may properly be granted.

## I. BACKGROUND

For purposes of this appeal, the allegations of the complaint must be taken as true. They paint the following picture.

Dwyer was employed by the Retirement System from 1965 until 1983. In 1970, he was provisionally appointed to the position of Chief Mortgage Investment Examiner for the System, a position in the competitive class of the New York State Civil Service. Some two years later, his appointment to that position became permanent. Dwyer's responsibilities as Chief Mortgage Investment Examiner consisted primarily of acting as legal advisor to the System on all mortgage loans made by it, preparing and reviewing all documents relating to such loans, and monitoring the compliance by the System and its mortgagors with applicable statutes and regulations. The essential functions and duties of the Chief Mortgage Investment Examiner were centered in New York City.

Dwyer performed his duties capably. Nonetheless, Regan, who was Comptroller of the State of New York (the "State") and sole trustee and administrative head of the System, together with some of his agents and subordinates, developed a personal dislike for Dwyer and formulated a plan to remove him from his position without showing that he had performed his work incompetently or engaged in any misconduct and without affording him a hearing. First, in April 1983, in an effort to induce Dwyer to resign or retire, Regan, knowing that the duties of Dwyer's position could not be discharged effectively from Albany, New York, approved the reassignment of Dwyer's position from New York City to Albany. Regan also knew that Dwyer, with his wife and six children, lived in

Westchester County, near New York City, and denied Dwyer travel reimbursement when his position was reassigned to Albany. Despite the inefficiency and personal expense, Dwyer refused to resign.

When it became apparent that the reassignment would not induce Dwyer's resignation, Regan purported to abolish Dwyer's position, claiming to base that decision on a fiscal crisis that necessitated the consolidation of mortgage service functions. Accordingly, in September 1983 Dwyer was advised that his position would be abolished; and on October 31, 1983, his employment with the State was terminated. The complaint alleged that no such fiscal crisis existed and no consolidation occurred; that Regan's invocation of these factors was another "subterfuge" designed to get rid of Dwyer; and that Dwyer's position was not in fact eliminated but was "reconstitute[d]" in the hands of another, less senior, employee of the Retirement System. Dwyer contended that this scheme deprived him of his property right in his position without due process of law, and he demanded reinstatement, backpay, compensatory and punitive damages, and reasonable attorney's fees.

Without filing an answer, Regan moved to dismiss the complaint pursuant to Fed.R. Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, contending, *inter alia*, that (1) Dwyer had no constitutionally protected property interest in not having his position reassigned to Albany or abolished, (2) even if Dwyer did have such a property interest, the postabolition procedures available to Dwyer under N.Y. Civ.Prac.Law art. 78 (McKinney 1981) ("Article 78") satisfied the constitutional requirements of due process, and (3) Dwyer's complaint sought recovery from the State and was therefore barred by the Eleventh Amendment.

The district court granted Regan's motion without opinion, stating only that the complaint was dismissed "pursuant to *Hudson v Palmer*, — U.S. —, [—, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393] (1984); *Parratt v. Taylor*, 451 U.S. 527 [101 S.Ct. 1908, 68 L.Ed.2d 420] (1981) and *Giglio v Dunn*, 732 F.2d 1133 (2d Cir, 1984)." This appeal followed.

## II. DISCUSSION

On appeal, Dwyer contends that the allegations of his complaint stated a claim under 42 U.S.C. § 1983. He contends that (1) under New York law, he had a right not to be removed from his position unless he was guilty of incompetency or misconduct; (2) this right constituted a "property" interest within the meaning of the Due Process Clause of the Fourteenth Amendment; (3) the bad-faith reassignment and sham abolition of his position by Regan in order to remove Dwyer from that position and give it to another employee of the System constituted a deprivation of that property right; and (4) the failure to accord Dwyer an opportunity for a hearing prior to that deprivation violated his right to due process.

In order to state a claim under § 1983, a plaintiff must allege (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. at 535, 101 S.Ct. at 1912; *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). In the present case, Regan concedes that the complaint adequately alleged that the actions taken by Regan, the State Comptroller and head of the Retirement System, were taken under color of state law. Therefore, although Regan does raise an Eleventh Amendment argument, which we address in Part II.B. below, the only question raised as to the adequacy of the complaint to state a claim under § 1983 is whether Dwyer had a due process right to a hearing prior to the termination of his employment.

In reviewing the dismissal of a complaint pursuant to Rule 12(b)(6) we, like the district court in deciding the motion, *see Dahl-*

*berg v. Becker,* 748 F.2d 85, 88 (2d Cir. 1984), *cert. denied,* — U.S. ——, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985), must accept as true the material facts alleged in the complaint, *see Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 740, 96 S.Ct. 1848, 1850, 48 L.Ed.2d 338 (1976); *Giglio v. Dunn,* 732 F.2d at 1134; *Fine v. City of New York,* 529 F.2d 70, 75 (2d Cir.1975). We may uphold the dismissal only if the complaint leaves no doubt that the plaintiff " 'can prove no set of facts in support of his claim which would entitle him to relief.' " *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). This principle is applied with particular strictness when the plaintiff contends that there has been a violation of his civil rights. *See Owens v. Haas,* 601 F.2d 1242, 1247 (2d Cir.), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979); *Turpin v. Mailet,* 579 F.2d 152, 167 (2d Cir.) (en banc), *vacated and remanded on other grounds,* 439 U.S. 974, 99 S.Ct. 554, 58 L.Ed.2d 645 (1978); *Escalera v. New York City Housing Authority,* 425 F.2d 853, 857 (2d Cir.), *cert. denied,* 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970). While we are not persuaded that Dwyer's present complaint sufficiently alleges all of the facts prerequisite to success on his claim of denial of a pretermination hearing, and while the Eleventh Amendment plainly would bar the granting of Dwyer's request for backpay, we conclude (a) that it is not clear that Dwyer could prove no set of facts in support of his claim, and (b) that if he were able to allege and prove the appropriate facts on remand, there would be no Eleventh Amendment impediment to his claims for reinstatement, damages, or attorney's fees.

### A. The Alleged Constitutional Deprivation

The issue of whether the complaint adequately alleged that Dwyer was deprived of a due process right to a pretermination hearing depends on (1) whether, within the meaning of the Due Process Clause, Dwyer had a "property" interest in his position and was deprived of that interest; and (2) whether due process required a hearing prior to the deprivation. We conclude that the complaint is sufficient as to the first of these factors but not as to the second.

### 1. The Nature and Scope of Dwyer's "Property" Interest

"Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law ....' " *Cleveland Board of Education v. Loudermill,* — U.S. ——, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) (*"Loudermill"*) (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)); *accord Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978); *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). Under New York law "a person holding a position by permanent appointment in the competitive class of the classified civil service," N.Y.Civ.Serv.Law § 75(1)(a) (McKinney 1983), may "not be removed ... except for incompetency or misconduct," *id.* § 75(1). In *Berns v. Civil Service Commission,* 537 F.2d 714 (2d Cir.1976), *cert. denied,* 430 U.S. 930, 97 S.Ct. 1549, 51 L.Ed.2d 774 (1977), we held that an employee of the New York City Police Department whose position was subject to N.Y.Civ. Serv.Law § 75(1) thereby possessed "an 'enforceable expectation of continued public employment,' " which constituted a "property interest in [her] job that will be protected by the due process clause." 537 F.2d at 716 (quoting *Bishop v. Wood,* 426 U.S. at 345, 96 S.Ct. at 2077); *accord Vega v. Civil Service Commission,* 385 F.Supp. 1376 (S.D.N.Y.1974). In *Loudermill,* 105 S.Ct. at 1491–92, the Supreme Court held that materially similar provisions of Ohio law conferred upon civil servants to whom they applied "property rights in continued employment" which were subject to the

Fourteenth Amendment's guarantee of due process. *See also Board of Regents v. Roth,* 408 U.S. at 577–78, 92 S.Ct. at 2709; *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

In his complaint, Dwyer alleged that he held his position by "permanent appointment" and that that position was "in the competitive class of the New York State civil service." Thus he alleged facts that, under § 75(1), entitled him not to be removed from his position except for incompetency or misconduct. He thus alleged sufficient facts to show that he had a property interest that was protected by the Due Process Clause.

Regan's contention that the complaint did not show such a property interest consists chiefly of two arguments, both of which we find unpersuasive. First, asserting that Dwyer alleged only that his position was reassigned to another location and later abolished, Regan contends that, while a permanent civil-service employee has a right not to be fired absent incompetency or misconduct, he has no right to have his position remain in the same location or remain in existence. This argument misconstrues the thrust of Dwyer's complaint. Dwyer does not allege that a *bona fide* reassignment and abolition deprived him of his property right in his position. Rather, his central premise is that both the reassignment and the so-called abolition were pretexts, masking bad-faith efforts by Regan to remove him from a position that continued to exist. That premise is supported by the complaint's factual allegations that the functions and duties of Dwyer's position were "centered in New York City" and could not be "adequately or effectively carried out in Albany," that there was no bona fide fiscal crisis requiring the abolition of the position, and that the position was not abolished but was given to another employee of the Retirement System. Whether or not these allegations could be proven before an appropriate tribunal, they adequately plead that Dwyer was improperly removed from a position that, in effect, continued to exist, rather than that he was left unemployed because his position was relocated or abolished.

Alternatively, Regan argues that, even reading the complaint as charging the improper removal of Dwyer from a continuing position, the complaint does not adequately plead the deprivation of a property right because the source of Dwyer's property right in his position is New York law and the extent of that right is defined and limited not only by the substantive provisions of New York law but also by the procedures that New York law affords an employee for vindication of that right. Thus, the argument goes, since New York law provides that the only procedure available to an employee whose employment was terminated when his position was purportedly abolished is a postremoval Article 78 proceeding, the failure to accord Dwyer a preremoval hearing did not deprive him of his property right in his position. Such arguments have been squarely rejected by the Supreme Court in *Loudermill,* 105 S.Ct. at 1492–93; *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 432, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982); and *Vitek v. Jones,* 445 U.S. 480, 491, 100 S.Ct. 1254, 1262, 63 L.Ed.2d 552 (1980).

In *Vitek v. Jones,* the Court stated that "minimum [procedural] requirements [are] a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action." 445 U.S. at 491, 100 S.Ct. at 1262. The Court elaborated in *Loudermill:*

The point is straightforward: The Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct. Were the rule otherwise, the Clause would be reduced to a mere tautology. "Property" cannot be defined by the procedures provided for its deprivation any more than can life or liberty. The right to due process "is

conferred, not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." *Arnett v. Kennedy, supra,* 416 U.S. [134,] 167, 94 S.Ct. [1633,] 1650 [40 L.Ed.2d 15] [ (1974) ] (POWELL, J., concurring in part and concurring in result in part); see *id.,* at 185, 94 S.Ct., at 1659 (WHITE, J., concurring in part and dissenting in part).

In short, once it is determined that the Due Process Clause applies, "the question remains what process is due." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The answer to that question is not to be found in the [state] statute.

105 S.Ct. at 1493.

We conclude that the complaint adequately pleaded that Dwyer had a property right of which he was deprived. The question remains whether due process required that he be given some kind of hearing prior to the alleged deprivation.

### 2. *The Process Due*

■ Although due process does not always require that the state provide a hearing prior to the initial deprivation of an individual's property, *see Hudson v. Palmer,* 104 S.Ct. at 3204; *Parratt v. Taylor,* 451 U.S. at 540, 101 S.Ct. at 1915, as a general matter the removal of a tenured employee from his position requires some kind of preremoval hearing. As the Supreme Court stated in *Loudermill,*

> [w]e have described "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (emphasis in original); see *Bell v. Burson,* 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90 (1971). This principle requires "some kind of a hearing"

prior to the discharge of an employee who has a constitutionally protected property interest in his employment.

105 S.Ct. at 1493 (footnote omitted).

Accepting the allegations of the complaint as true, as we must at this stage, we do not believe that Regan's announcement that Dwyer's position was being abolished calls for a deviation from this principle. Under New York law, the State would not have been allowed to remove Dwyer from his ongoing position without showing that he was incompetent or had engaged in misconduct. N.Y.Civ.Serv.Law § 75(1). Thus, if the State had determined that it wished simply to separate Dwyer from his position, it would have been required by due process to accord him a pretermination hearing. The complaint asserts that separating Dwyer from his ongoing position was in fact Regan's goal. If this is so, some kind of pretermination hearing plainly was required. In such circumstances, the mere fact that a different reason for the termination of Dwyer's employment was stated did not eliminate the requirement of a pretermination hearing. The State may not avoid its obligation to provide a pretermination hearing by engaging in sham or pretextual conduct.

In dismissing the complaint, the district court gave no indication of its rationale other than its citation to *Parratt v. Taylor, Hudson v. Palmer,* and *Giglio v. Dunn.* We do not believe these authorities required the dismissal of the complaint. In *Parratt,* the Court rejected a prisoner's claim that the state's failure to provide a hearing prior to the negligent loss by prison personnel of his hobby kit violated due process. It reasoned that the

> tortious loss of a prisoner's property as a result of a random and unauthorized act by a state employee ... is not [the] result of some established state procedure and the State cannot predict precisely when the loss will occur. It is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place.... Indeed, in most cases it is not only impracticable, but

impossible, to provide a meaningful hearing before the deprivation.

451 U.S. at 541, 101 S.Ct. at 1916. Therefore, the Court held that the availability, under state law, of a postdeprivation tort action afforded the prisoner all of the process to which he was constitutionally entitled. In *Hudson*, the Court extended the ruling of *Parratt* to circumstances in which the unauthorized destruction of a state prisoner's personal property by a prison guard was intentional. The Court noted that "[t]he underlying rationale of *Parratt* is that when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply 'impracticable' since the state cannot know when such deprivations will occur." 104 S.Ct. at 3203. Finding that "[t]he state can no more anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct," *id.*, the Court held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available," *id.* at 3204. The Court rejected the argument that intentional deprivations, unlike negligent ones, can be anticipated because the employee who intends the deprivation has foreknowledge of his intention, stating that "[w]hether an individual employee himself is able to foresee a deprivation is simply of no consequence. The controlling inquiry is solely whether the State is in a position to provide for predeprivation process." *Id.*

In the present case, we infer from the district court's citation of the portion of the *Hudson* opinion just described, *i.e.*, 104 S.Ct. at 3202–04, that the district court's view was that if Regan's announced abolition of Dwyer's position was in fact a sham, then his acts were unauthorized by the State and, since the State could not have anticipated such unauthorized acts, the failure to provide Dwyer with a pretermination hearing did not, according to *Par-*

*ratt* and *Hudson*, violate due process. We reject this view principally because it ignores the difference between lower-echelon state employees, such as those in *Parratt* and *Hudson*, and high-ranking state officials, such as Regan. In *Parratt*, the depriving employees were merely prison personnel responsible for sorting and delivering mail to prisoners; in *Hudson* the depriving employee was an ordinary prison guard. Although the Court found crucial the inability of the states to anticipate the actions of the depriving employees, it nonetheless must have recognized that a state, as an incorporeal entity, can establish policy, take action, and anticipate events only through its officials and employees. Therefore, we read the *Parratt* and *Hudson* Courts' statements that the states were unable to anticipate the depriving acts of their employees to mean that such anticipation was impossible for the states' more senior officials.

In contrast, where the depriving actions were taken by a high-ranking official having final authority over the decision-making process, this Court has found that they were not random or unauthorized within the meaning of *Parratt*. See *Burtnieks v. City of New York*, 716 F.2d 982 (2d Cir. 1983). In *Burtnieks*, the City of New York had razed an apartment building without giving the owner notice and an opportunity for a predemolition hearing. The City argued that it could not have been expected to anticipate these actions because they violated City ordinances; thus, the actions of the City officials were "random and unauthorized" within the meaning of *Parratt*, and the City's failure to afford the building owner a prior hearing did not violate due process. We rejected this argument, holding that "decisions made by officials with final authority over significant matters, which contravene the requirements of a written municipal code, can constitute established state procedure" for purposes of the analysis required by *Parratt*. *Id.* at 988.

■ The *Burtnieks* principle governs the present case. Regan was not a lower-

echelon employee; he was one of the highest ranking officers of the State. He was the sole trustee and administrative head of the System and was the State official with final authority over Retirement System personnel decisions. Accordingly, Regan's ability to anticipate the actions that he intended was, unlike the foreknowledge of the guard in *Hudson,* fairly attributable to the State itself. We therefore hold that Regan's acts were not "random and unauthorized" within the meaning of *Parratt* and *Hudson,* and those cases do not support a conclusion that due process did not require that Dwyer be afforded a pretermination hearing.

Nonetheless, it is not clear that a pretermination hearing was required in the present case. A state may well, from time to time, decide to make its operations more efficient by abolishing or consolidating positions, and we are not persuaded that the state must routinely provide hearings for employees whose positions are targeted for elimination whenever the state adopts such efficiency measures. Where, however, the state has a due process obligation to provide a hearing prior to removing an employee from an ongoing position, and an employee who has received notice that his position is to be eliminated protests that notice and contends that it is but a sham and pretext for the deprivation of his property right, the state must be prepared to grant the employee some kind of hearing prior to the termination of his employment.

Further, we think that, in the context of an assertion that the actions announced by a state agency are a sham or a pretext designed to achieve some impermissible goal, due process requires that the pretermination hearing, assuming one has been requested, be held before a fact-finder other than the agency undertaking the challenged action. In the typical case in which a governmental employer is required to hold a pretermination hearing on the issue of cause for termination, the employing agency is somewhat neutral as to whether the employee did or did not do the acts alleged to constitute cause. When, however, the issue is whether the announced abolition of a position is genuine or sham, the inquiry must focus on the conduct and motives of the employing agency itself, and that agency is insufficiently neutral to conduct the inquiry.

We do not believe the requirements that a pretermination hearing on the claim of sham be provided if one is requested, and that such a hearing be before a body other than the agency accused of the sham, will detract from the state's ability to adopt bona fide efficiency measures. We do think they will be likely to have a deterrent effect on any inclination to use a pretextual announcement of such measures in order to circumvent an employee's property right not to be removed from his position without due cause.

In the present case, it remains unclear whether a pretermination hearing was required, because Dwyer's complaint does not clearly allege that he requested such a hearing. The complaint alleges that Dwyer protested the transfer of his position from New York City to Albany; it does not state that he similarly protested the announced elimination of his position or that he sought a pretermination hearing on the ground that the announcement was pretextual. Given the prior dearth of authority as to the existence and contours of a right to a pretermination hearing on a claim of sham, we conclude that Dwyer should be given an opportunity to amend his complaint to allege, if such is the case, that he did in fact request a pretermination hearing into his claim that the announced elimination of his position was a sham. Since, however, we have rejected here the proposition that a state must routinely provide pretermination hearings for employees whose positions are targeted for elimination and have held only that it must provide such hearings when requested, we conclude that if Dwyer cannot show that he made a timely request for a pretermination hearing, he is not entitled to recover for the failure to receive such a hearing.

Although Dwyer might argue, if he made no such request, that the requirement that

a request must be made before the employee becomes entitled to a pretermination hearing into a claim of sham should not be applied to him because nothing in the prior state of the law alerted him to such a requirement, we would disagree for several reasons. First, there had been no prior enunciation of the principle that an employee who claimed the announced abolition of his job was a sham had any entitlement to a pretermination hearing; thus, our ruling here that the right to such a hearing is a conditional one, arising only upon a timely request, merely defines and does not diminish the right. In addition, we note that Dwyer was not a layman totally unversed in the law; in his position as Chief Mortgage Investment Examiner, he acted as the legal advisor to the Retirement System. Although he may not have been an expert on civil rights law, it seems likely that he should have had sufficient legal expertise to realize that some action on his part might be necessary to protect his right to a pretermination hearing. Further, according to the complaint, Dwyer had sufficient information to realize prior to the termination of his employment that he might have a claim of sham. He has alleged in connection with the relocation of his position to Albany that a "ranking employee in the Retirement System [told him] 'they want you out', 'they want the job'." In all the circumstances, we would see no reason to except Dwyer from our ruling that an employee's right to a pretermination hearing into his claim of sham arises only upon request.

If the proceedings on remand establish that Dwyer requested and was denied a pretermination hearing, he will be entitled, assuming no doctrinal impediment to recovery, *see, e.g.,* Part II.B. below, to a determination of his damages as a result of the denial. If Regan can show that Dwyer's employment would have been terminated even after a proper pretermination hearing, Dwyer will nonetheless be entitled to recover nominal damages. *See Carey v. Piphus,* 435 U.S. 247, 266–67, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978).

Finally, since "[t]he Due Process Clause requires provision of a hearing 'at a meaningful time,' " *Loudermill,* 105 S.Ct. at 1496 (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)), we note that even if Dwyer did not timely demand a pretermination hearing, he was nevertheless entitled to a posttermination hearing on his contention that he was impermissibly deprived of his property right. The nature of a claim of sham is such that a posttermination hearing will likely be more valuable to the claimant than a pretermination hearing, since an after-the-fact transfer of the claimant's duties to a new employee would provide evidence in support of the claim of sham. Here, for example, Dwyer's complaint alleges that his position was "reconstitute[d]" in the hands of another employee. Although it is not clear precisely what "reconstitute[d]" means, it seems plainly to refer to an action that postdated Dwyer's termination.

Dwyer has not suggested that he could not have obtained a full and fair posttermination adjudication of his claims in the state courts. Nor has he alleged that he attempted to pursue that avenue to relief or sought an administrative posttermination hearing. On remand, if it develops that there was no request for a pretermination hearing, the District Court should then afford Dwyer an opportunity to show, if he can, that the state courts did not afford a full and fair opportunity to adjudicate his claim of a sham abolition of his position. If no pretermination hearing was requested and if a state court proceeding would have been adequate, the complaint should be dismissed. On the other hand, if Dwyer can show that state court proceedings would have been inadequate, then Dwyer was entitled, upon request, to an administrative posttermination hearing on his claim of sham abolition. In that event, if he can show that he requested and was denied such a hearing, he will be entitled, subject to available defenses, *see, e.g.,* Part II.B. below, to recover for that denial. However, even if state court proceedings are shown to have been inadequate, if Dwyer

made no request for either a pretermination hearing or an administrative posttermination hearing, the complaint should be dismissed.

## B. *The Eleventh Amendment*

Regan contends that Dwyer's action, though nominally brought against Regan, is in reality an action against the State and is therefore barred by the Eleventh Amendment. Assuming that on remand Dwyer can amend his complaint to state a claim within the framework discussed above, we conclude that Dwyer's claim for backpay would be barred by the Eleventh Amendment, but that his claims for damages, reinstatement, and attorney's fees would not be so barred.

The Eleventh Amendment states that "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Supreme Court has consistently held that the federal courts lack jurisdiction not only over suits against a state brought by citizens of other states, as the literal language of the Amendment provides, but also over suits against such states brought by their own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974); *Employees v. Department of Public Health & Welfare*, 411 U.S. 279, 280, 93 S.Ct. 1614, 1615, 36 L.Ed.2d 251 (1973); *Parden v. Terminal Railway of the Alabama State Docks Department*, 377 U.S. 184, 186, 84 S.Ct. 1207, 1209, 12 L.Ed.2d 233 (1964); *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Thus, it is clear that, with few exceptions, *cf. Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (Congress has authority under § 5 of Fourteenth Amendment to override Eleventh Amendment for purposes of suits brought under federal statutes enacted to provide a means of enforcing the rights guaranteed by the Fourteenth Amendment), federal courts are barred from entertaining suits brought by a private party against a state in its own name. *See, e.g., Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S.Ct. 3057, 3058, 57 L.Ed.2d 1114 (1978) (per curiam); *Missouri v. Fiske*, 290 U.S. 18, 26, 54 S.Ct. 18, 20, 78 L.Ed. 145 (1933).

Where, however, a suit is brought not against the state in its own name but against a state official, the "question arises as to whether that suit is a suit against the State itself." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. at 101, 104 S.Ct. at 908; *see Edelman v. Jordan*, 415 U.S. at 663, 94 S.Ct. at 1355; *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 462, 65 S.Ct. 347, 349, 89 L.Ed. 389 (1945). The Supreme Court's approach to this question has, by the Court's own admission, "not been entirely consistent." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. at 101, 104 S.Ct. at 908. Nonetheless, it is reasonably clear that, at least where the plaintiff's claim alleges a violation of his constitutional rights, *compare Pennhurst State School & Hospital v. Halderman* (holding that Eleventh Amendment bars federal jurisdiction over pendent state cause of action brought against state official in his official capacity regardless of remedy sought), the answer to the question of whether the suit is against the state itself depends primarily upon the nature of the relief sought.

In general, suits for monetary awards out of state funds are deemed suits against the state and thus are barred; suits for monetary awards from a state official in his individual capacity or suits for prospective injunctive relief are not deemed suits against the state and hence are not barred. Thus, in *Edelman v. Jordan*, a case in which the plaintiffs claimed to have been deprived of welfare benefits to which they were statutorily entitled, the Court held that in "a § 1983 action ... a federal court's remedial power ... may not include a retroactive award which requires the payment of funds from the state treasury." 415 U.S. at 677, 94 S.Ct. at 1362;

*accord Pennhurst State School & Hospital v. Halderman,* 465 U.S. at 102, 104 S.Ct. at 909; *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979); *Hutto v. Finney,* 437 U.S. 678, 690, 98 S.Ct. 2565, 2573, 57 L.Ed.2d 522 (1978); *Milliken v. Bradley,* 433 U.S. 267, 289, 97 S.Ct. 2749, 2761, 53 L.Ed.2d 745 (1977). Accordingly, the *Edelman* Court held that an award to the plaintiffs of past-due welfare benefits that "should have been paid, but [were] not" was barred by the Eleventh Amendment. 415 U.S. at 664, 94 S.Ct. at 1356. To the extent, however, that the *Edelman* district court's order required the state to restore the plaintiffs to the state's welfare rolls, thus affording prospective relief, the Supreme Court found no violation of the Eleventh Amendment. *See Edelman v. Jordan,* 415 U.S. at 664, 94 S.Ct. at 1356; *accord Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *New York State Association for Retarded Children, Inc. v. Carey,* 596 F.2d 27, 39 (2d Cir.), *cert. denied,* 444 U.S. 836, 100 S.Ct. 70, 62 L.Ed.2d 46 (1979). Similarly, where the relief requested, though requiring the expenditure of state funds, is ancillary to such a prospective injunction, it is not barred. *See, e.g., Quern v. Jordan,* 440 U.S. at 337, 99 S.Ct. at 1143; *Hutto v. Finney,* 437 U.S. at 690–91, 98 S.Ct. at 2573; *Milliken v. Bradley,* 433 U.S. at 289, 97 S.Ct. at 2761. Finally, where the relief sought, though an award of damages for a past deprivation, is sought not from the state treasury but from the official's personal funds, the Eleventh Amendment is no bar. *See, e.g., Scheuer v. Rhodes,* 416 U.S. at 238, 94 S.Ct. at 1687; *Myers v. Anderson,* 238 U.S. 368, 35 S.Ct. 932, 59 L.Ed. 1349 (1915).

██ Dwyer's requests for relief, including reinstatement, backpay, compensatory and punitive damages, and attorney's fees, partake of each of these categories and are governed by the above principles. The request that Dwyer be reinstated to his position is not barred by the Eleventh Amendment. Reinstatement is purely prospective injunctive relief that orders the state official to return the former employee to the

state's payroll. Whether or not reinstatement is an appropriate remedy to be granted by the district court, *see Perry v. Sindermann,* 408 U.S. 593, 603, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972) (fired teacher's "[p]roof of ... a property interest [in his employment] would not, of course, entitle him to reinstatement. But such proof would obligate college officials to grant a hearing at his request, where he could be informed of the grounds for his nonretention and challenge their sufficiency"), an order that reinstatement be granted or that a reinstatement hearing be conducted is the sort of prospective relief that is not barred by the Eleventh Amendment. *See Edelman v. Jordan,* 415 U.S. at 664, 94 S.Ct. at 1356.

In contrast, Dwyer's claim for backpay seeks "the payment of ... money which [he contends] should have been paid, but was not." *Id.* If these sums should have been paid, they should have been paid by the State, not by Regan in his individual capacity, and an award of backpay would necessarily have to be satisfied from State funds. Thus, Dwyer's backpay claim is a claim for "a retroactive award which requires the payment of funds from the state treasury," *id.* at 677, 94 S.Ct. at 1362; *see Ford Motor Co. v. Department of Treasury,* 323 U.S. at 464, 65 S.Ct. at 350, and is barred by the Eleventh Amendment, absent a waiver of immunity by the State. We are aware of nothing in the present case to suggest that the State has waived its immunity here.

Dwyer's request for compensatory and punitive damages stands on different footing from his request for backpay. The complaint asserts claims against Regan in both his official and his individual capacities, and while we are aware of no theory that could render Regan individually liable for Dwyer's backpay, such is not the case with respect to the claim for damages. While Regan had no duty in his individual capacity to pay Dwyer's salary, he did have a duty not to deny Dwyer his federally protected right to due process. Thus, if Dwyer can establish that he requested and

was denied a pretermination hearing into his claim that the announced elimination of his position was a sham, there is no Eleventh Amendment impediment to his recovering damages for that denial from Regan. Similarly, if Dwyer were to establish that he timely requested and was denied a post-termination hearing, there would be no Eleventh Amendment impediment to his being awarded damages for that denial. We of course express no view as to the merits of Dwyer's claims.

Finally, if Dwyer is granted monetary or injunctive relief, there is no doctrinal bar to his recovery of attorney's fees. This Court has consistently held that a claim for attorney's fees, when brought in conjunction with a claim for prospective injunctive relief based upon a constitutional cause of action, is ancillary to the injunction claim and therefore not barred by the Eleventh Amendment, *see Gagne v. Maher,* 594 F.2d 336, 341 (2d Cir.1979), *aff'd,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); *Fitzpatrick v. Bitzer,* 519 F.2d 559, 571 (2d Cir.1975), *aff'd in part and rev'd in part,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); *Class v. Norton,* 505 F.2d 123, 126 (2d Cir.1974); *Jordan v. Fusari,* 496 F.2d 646, 651 (2d Cir.1974), and the Supreme Court has held that an award of attorney's fees pursuant to 42 U.S.C. § 1988 (1982) is not barred by the Eleventh Amendment, *Hutto v. Finney,* 437 U.S. at 693–700, 98 S.Ct. at 2574–78. We see no reason to depart from these principles here.

## CONCLUSION

The judgment dismissing the complaint is vacated and the matter is remanded for further proceedings not inconsistent with this opinion.