**Darrick WHITFIELD, Plaintiff,**

v.

**William J. FRASER, Correction Commissioner of the New York City Department of Correction; New York City Department of Correction; and the City of New York, Defendants.**

**No. 02 Civ. 9790(RWS).**

United States District Court,
S.D. New York.

July 17, 2003.

claim presents circumstances which mitigate against the imposition of sanctions.

Koehler & Isaacs by Mercedes Maldonado, New York City, for Plaintiff.

Honorable Michael A. Cardozo, Corporation Counsel of the City of New York by Nabisubi Musoke, Assistant Corporation Counsel, New York City, for Defendants.

## OPINION

SWEET, District Judge.

The defendants the New York City Department of Corrections ("DOC"); William Fraser, Commissioner of the DOC ("Fraser"); and the City of New York ("City") (collectively "Defendants") have moved under Rule 12(b)(6), Fed.R.Civ.P., to dismiss the complaint of plaintiff Darrik Whitfield ("Whitfield"). For the reasons set forth below, the motion is denied.

### Prior Proceedings

This action was commenced on December 11, 2002. The motion was heard and marked fully submitted on May 28, 2003.

### The Complaint

Whitfield was a tenured correction officer with the DOC. (Compl.¶ 30.) On December 1, 1999, Whitfield was arrested on charges involving his then tenant. (Compl.¶ 31.) As a result of the arrest, the DOC instituted disciplinary charges against him (Compl.¶ 32.), and on March 24, 2000, the DOC served Whitfield with disciplinary charges (Compl.¶ 33). On March 30, 2000, following a bench trial

Whitfield was convicted of Sexual Abuse in the third degree, a class B misdemeanor. (Compl.¶ 34.)

On June 8, 2000, Whitfield entered into a proposed negotiated plea agreement with the DOC regarding the disciplinary charges, but all parties understood that this agreement would not become final unless it was accepted by the Correction Commissioner's Office. (Compl.¶ 40.) The Correction Commissioner's Office rejected this proposed plea agreement. (Compl.¶ 41.) On February 13, 2002, Whitfield accepted a second proposed negotiated agreement, incorporating a more stringent penalty, but this agreement was likewise rejected by the Commissioner's Office. (Compl. ¶¶ 45–47.)

On August 12, 2002, the DOC terminated Whitfield's employment, pursuant to New York Public Officers Law § 30(1)(e) (POL § 30(1)(e)). (Compl.¶ 49.) Whitfield brings this action against the DOC, Fraser, and the City of New York. He challenges the constitutionality and application of POL § 30(1)(e) and argues that decision to terminate his employment was arbitrary and capricious under New York Civil Practice Rules and Regulations ("CPLR") Article 78. (Compl.¶¶ 1–2.)

### The Rule 12(b)(6) Standard

In considering a motion to dismiss pursuant to Rule 12(b)(6), the court should construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.2002) (*citing Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir.2001)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995) (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 235–236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Dis-

missal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir.2000).

### A.  *POL § 30(1)(e)*

POL § 30(1)(e) has been unchanged since its enactment in 1892. It provides for the automatic termination of public office when an employee commits "a felony, or a crime involving a violation of his oath of office."

The New York Court of Appeals interpreted "a crime involving a violation of [the] oath of office" in the *Matter of Duffy v. Ward*, 81 N.Y.2d 127, 596 N.Y.S.2d 746, 612 N.E.2d 1213 (1993). The court based its interpretation on the underlying purpose behind this statute—that "the public has a 'right to rest assured that its officers are individuals of moral integrity in whom they may, without second thought, place their confidence and trust.'" *Id.* at 131, 596 N.Y.S.2d 746, 612 N.E.2d 1213 (*quoting Matter of Toro v. Malcolm*, 44 N.Y.2d 146, 152, 404 N.Y.S.2d 558, 375 N.E.2d 739 (1978)). The court thus concluded that the statute reaches "only those misdemeanors that demonstrate a lack of moral integrity." *Id.* at 134, 596 N.Y.S.2d 746, 612 N.E.2d 1213. A crime demonstrating a lack of "moral integrity" "must be one involving willful deceit or a calculated disregard for honest dealings. More than intent or a criminal *mens rea* is needed for summary dismissal; there must be an intentional dishonesty or corruption of purpose inherent in the act prohibited by the Penal Law." *Id.* at 135, 596 N.Y.S.2d 746, 612 N.E.2d 1213.

In applying this definition, it is necessary to look "not to the facts of the particular case but solely to the elements of the crime." *Duffy*, 81 N.Y.2d at 130, 596 N.Y.S.2d 746, 612 N.E.2d 1213. This is

the case because in making convictions of certain crimes grounds for immediate dismissal, "the Legislature implicitly acknowledged that no factual showing by the officeholder was needed, for under no circumstances could facts unique to the incident mitigate the violation of the public trust." *Id.* at 133, 596 N.Y.S.2d 746, 612 N.E.2d 1213. To construe the law otherwise—"as giving the Commissioner unbridled discretion to make a fact-based determination about dismissal but foreclosing the opportunity to develop the facts"—would "risk the potential for arbitrary government action." *Id.* Thus, there is no need for a hearing under this statute. As explained by the New York Court of Appeals, "Underlying the necessity for a due process hearing is some factual dispute impacting upon the employer's right to discharge.... When the operative facts are not in dispute, a hearing is unnecessary." *In the Matter of Economico v. Village of Pelham,* 50 N.Y.2d 120, 128, 428 N.Y.S.2d 213, 405 N.E.2d 694 (1980) (holding in the context of a POL § 73 discharge that there is no need for a hearing when there is no dispute that an employee was absent from work for over a year on account of a non-service related disability). *See also Matter of Miller v. Facilities Dev. Corp.,* 199 A.D.2d 727, 605 N.Y.S.2d 478 (1993) (holding that a former resident inspector, who confessed to accepting money from an outside contracting company on the very project on which he was assigned to work in violation of POL §§ 73–78, could be summarily dismissed and was not entitled to a hearing).

### 1. The Statute is not Unconstitutionally Vague

Whitfield argues that "a crime involving a violation of [the] oath of office," even with the *Duffy* interpretation, is unconstitutionally vague and potentially all-inclusive. A law is void for vagueness "where one could not reasonably understand" what conduct it purports to proscribe. *United States v. Nat'l Dairy Prods. Corp.,* 372 U.S. 29, 32–33, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963). To be constitutional, a statute must define prohibited conduct with "sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).

■ "In determining the sufficiency of the notice a statute must of necessity be examined in light of the conduct with which a defendant is charged." *Nat'l Dairy Prods. Corp.,* 372 U.S. at 33, 83 S.Ct. 594. Although, as Whitfield points out, the DOC follows no written guidelines in determining what misdemeanors violate the oath of office, Whitfield was on sufficient notice that sexual abuse was a crime in violation of the oath of office, subjecting him to POL § 30(e)(1). First, in committing a crime while holding public office, Whitfield was already on notice of POL § 30(e)(1)'s potential applicability. Furthermore, sexual abuse is a crime clearly "demonstrating a lack of moral integrity" and "intentional dishonesty or corruption." *Duffy,* 81 N.Y.2d at 135, 596 N.Y.S.2d 746, 612 N.E.2d 1213. Cases have held crimes of sexual abuse to be particularly "heinous." *E.g., Eze v. Senkowski,* 321 F.3d 110, 112 (2d Cir.2003); *Lindstadt v. Keane,* 239 F.3d 191 (2d Cir.2001); *People v. Harrington,* 108 A.D.2d 1062, 485 N.Y.S.2d 631, 634 (3d Dep't 1985).

### 2. The Delegation of Legislative Power is Not Unconstitutional

Whitfield further claims that the statute's phrasing, "a crime involving a violation of [the] oath of office," is so vague as to constitute an unconstitutional delegation of legislative power to the courts.

Statutes have "strong presumptive validity," and they "are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." *Nat'l Dairy Prods. Corp.*, 372 U.S. at 32, 83 S.Ct. 594. Courts seek "an interpretation which supports the constitutionality of legislation." *Id.* (*citing United States v. Rumely*, 345 U.S. 41, 47, 73 S.Ct. 543, 97 L.Ed. 770 (1953); *Crowell v. Benson*, 285 U.S. 22, 63, 52 S.Ct. 285, 76 L.Ed. 598 (1932)). However, "[t]he primary consideration of courts in interpreting a statute is to ascertain and give effect to the intention of the Legislature." *Riley v. County of Broome*, 95 N.Y.2d 455, 463, 719 N.Y.S.2d 623, 742 N.E.2d 98 (2000) (citations omitted). *See also Matter of Sutka v. Conners*, 73 N.Y.2d 395, 403, 541 N.Y.S.2d 191, 538 N.E.2d 1012 (1989) ("[T]he court's objective is, of course, to discern and apply the will of the Legislature, not the court's own perception of what might be equitable.... In matters of statutory interpretation ..., legislative intent is the great and controlling principle.").

■ The courts have taken care to respect' the language and intention of the POL § 30(1)(e). In *Duffy*, the Court of Appeals carefully considered and rejected constructions of the statute that "could not have been intended by the Legislature," settling on an interpretation that best tracks the language and "rationale" of the statute. 81 N.Y.2d at 134, 596 N.Y.S.2d 746, 612 N.E.2d 1213. Courts have further taken pains not to overstep their authority. For instance, in the *Matter of Toro*, the court states:

> [T]he Legislature has chosen to vacate a public office upon the officer's conviction of a felony. More than 50 years ago we so held ... and the Legislature has not changed or amended the substance of section 30 since our decision. In the

face of this clear statutory directive, the courts lack the power to order the reinstatement of a former officer or an award of back pay based on the subsequent reversal of the officer's conviction.

### 3. *No Hearing was Required Under the Statute*

Whitfield additionally argues that his termination from public office without a hearing was a due process violation. However, "[t]he due process protection afforded a public employee threatened with dismissal is dependent upon whether the employee has acquired a liberty or property interest in his employment ... it is only after the employee demonstrates a legitimate claim of entitlement to continued employment that due process considerations are implicated." *Economico*, 50 N.Y.2d at 125, 428 N.Y.S.2d 213, 405 N.E.2d 694.

Property interests in employment are not created by the Federal Constitution, but rather "they are created and their dimensions are defined by existing rules or understanding that stem from an independent source such as state law." *Greene v. McGuire*, 683 F.2d 32, 34 (2d Cir.1982). As explained in *Economico*, 50 N.Y.2d at 125–26, 428 N.Y.S.2d 213, 405 N.E.2d 694:

> [W]hile the State may create property interests subject to due process safeguards, it may, in furtherance of a legitimate State interest, ... circumscribe the instances in which those rights will be recognized. A tenured civil servant, then, has no entitlement to continued employment in perpetuity. The public policy of the State, by the terms of its statutes, regulations and common law, defines the scope and contours of that interest. By way of illustration, the public interest would be ill served if its officers could remain in office despite an adjudication that there has been a violation of the public trust. Accordingly, section 30 (subd 1, part e) of the Public Officers Law provides that the property

interest of a public officer in his position is extinguished upon his conviction of a felony.

Thus, Section 73 "grants civil servants something less than an unrestricted property right to continued employment subject to the full panoply of due process protections." *Id.* at 126, 428 N.Y.S.2d 213, 405 N.E.2d 694. Rather, it grants civil servants "an entitlement to continued employment inextricably entwined with the limitations contained in the statute for determining that right." *Id.*[1]

Structurally, POL § 30(1) enumerates the conditions for public employment, stating: "Every office shall be vacant upon the happening of one or more of the following events ..." Employees, who violate these conditions, have their offices automatically terminated and any property interests in their civil service status extinguished.[2]

*Schirmer v. Town of Harrison* is a case involving a violation under provision d, which sets out the residency requirement of POL § 30(1). 98 Civ. 2582, 1999 WL 61843 (Feb. 9, 1999). This case, which confirmed "that removals pursuant to § 30(1)(d) do not require a pre-termination hearing in order to satisfy due process," is instructive as to the existence of property interests in public office under this statute. *Id.* at *4. The court explained that "any interest crated by state law with regard to terminations pursuant to § 30(1) does not rise to a level such that public officials expect ... a pre-termination hearing." *Id.* at *4 n. 4. Thus, "[b]ecause no property

right or legitimate expectation or entitlement was taken away from the plaintiff when he was terminated without a pre-termination hearing, there is no due process violation." *Id.* at *5.

■ Similarly, case law has held that abstaining from the commission of felonies or misdemeanors implicating moral integrity is a condition for public employment. *Greene v. McGuire* is a case involving police officers who, previously convicted of a felony which was overturned on appeal, were applying for reinstatement and asserting that due process required that they be granted a hearing. 683 F.2d 32.[3] The Second Circuit reasoned that, because a vacancy was automatically created upon conviction by operation of the statute, the officers convicted of felonies lost their property rights in their jobs immediately upon conviction. *Id.* at 34. The court explained:

Under the governing state law in the present case plaintiffs lost absolutely whatever tenure they had. Section 30(1)(e) provides that every public office becomes *vacant* upon the officers' conviction of a felony.... It is clear that § 30(1)(e) was a condition on the jobs held by [the employees] which was not within the control of their employer but was a limitation as explicit as a clause in their contract. Once they were convicted—and the condition fulfilled—they lost their property interest. Nor is this condition unconstitutional for arbitrariness. It becomes operative only after a

1. As termination from public employment under POL § 30(1) cannot be characterized as a "disciplinary penalty," pursuant to New York Civil Service Law ("CSL") § 75, the hearing provisions in CSL § 75(1) inapplicable. *E.g. Schirmer v. Town of Harrison*, 98 Civ. 2582, 1999 WL 61843, , at *3 (Feb. 9, 1999).

2. In other contexts, a property interest in public employment is recognized only upon the fulfillment of certain conditions. *E.g.,*

*Berns v. Civil Serv. Comm'n*, 537 F.2d 714 (1976) (holding that a police administrative aide acquired a property interest in her employment, protected by due process, only once retained beyond a six month probationary period).

3. The legislature has since amended POL § 30(1)(e) in 1987 to allow for post-termination hearings in the case of reversed convictions.

determination by an independent body that the officer has been guilty of serious misconduct.

*Id.* at 34–35 (emphasis in original) (citations omitted). Thus, as no property interest remained vested in the officers, the police department was not required to give them a hearing when refusing to reinstate them. "When plaintiffs applied for reinstatement, they had neither the right to return nor any reasonable expectation of being rehired. Because state law left them nothing, Commissioner McGuire's decision deprived them of nothing. His decision does not implicate due process." *Id.* at 35.[4]

In *Weissinger v. Ward,* the court held that a hearing was not required in the case of an officer convicted of misdemeanor criminal facilitation, for aiding individuals in the commission of insurance fraud. 704 F.Supp. 349 (E.D.N.Y.1989). The court reasoned that "no property or liberty right was denied the plaintiff," as "[o]nce the conviction for a felony or violation of oath of office has been established, the conditions of Section 30(1)(e) are fulfilled and any property or liberty interest in a prior position is lost." *Id.* at 352. *See also Bowman v. Kerik,* 271 A.D.2d 225, 706 N.Y.S.2d 327 (1st Dep't 2000) (holding that correction officers properly had their public offices automatically vacated upon conviction of misdemeanors of tax evasion and, as such, no pre-termination hearings were required); *Segars v. City of Buffalo,* 237 A.D.2d 910, 654 N.Y.S.2d 919 (4th Dep't 1997) (holding that the misdemeanor, menacing in the second degree, is a

violation of the oath of office, calling for the automatic termination of public office); *Matter of DeCaro v. Ward,* 134 A.D.2d 967, 521 N.Y.S.2d 354 (1st Dep't 1987) (automatic vacation upon misdemeanor reckless endangerment arising out of a high speed car chase as a violation of the oath of office); *Matter of Farnworth v. Ward,* 141 A.D.2d 1011, 530 N.Y.S.2d 731 (1st Dep't 1988) (automatic vacation upon misdemeanor assault of a person in custody as a violation of the oath of office).

*Matter of Toro v. Malcolm* was a case where a correction officer was convicted of a felony and his position vacated pursuant to POL § 30(1)(e) as of the date of the conviction. 44 N.Y.2d 146, 404 N.Y.S.2d 558, 375 N.E.2d 739. Upon reversal of the conviction, the correction department voluntarily reinstated the officer, and the officer filed an action for back pay and benefits. The court refused to grant the officer back pay and benefits, holding that under POL § 30 the plaintiff was not a correction officer in the interim between his conviction and reinstatement. *Id.* at 150, 404 N.Y.S.2d 558, 375 N.E.2d 739. "[O]nce an office becomes vacant, the contingency of reversal of the judgment of conviction does not defeat the operation of this statutory directive." *Id.*

The court further pointed out that POL § 30 is not a punitive measure.[5] Besides protecting the public and the integrity of the office, it promotes the effective functioning of government. As the court explained:

> The automatic termination of a public office upon the officer's conviction of a

---

**4.** Although, as Whitfield points out, *Greene* dealt with whether an officer is entitled to a post-deprivation hearing, its logic is based on the fact that the officers' property rights immediately terminated upon their conviction, leaving no place for a pre-deprivation hearing. If even once a conviction is overturned, due process does not require a hearing, due process considerations do not point towards a

hearing for a conviction that has not been overturned.

**5.** In construing this statute in 1924, the New York Court of Appeals held that it is not punitive, but serves to remove inappropriate persons from positions of public honor. *Matter of Obergfell,* 239 N.Y. 48, 50, 145 N.E. 323 (1924).

felony is not a punishment meted out in consequence of the conviction. But rather, it is a legislative decision borne of the recognition that a public officer's conviction of a felony does not permit the cessation of governmental function for the period required to exhaust the appellate process.

*Id. See also Duffy*, 81 N.Y.2d at 131, 596 N.Y.S.2d 746, 612 N.E.2d 1213 ("[A]s a practical matter, governmental work should not go unattended or a position unfilled, while a convicted officeholder pursues a lengthy appeal.").

The instant case further differs significantly from cases where courts have required a pre-termination hearing. For instance, in *Duffy*, the court concluded that criminal trespass in the second degree is not a violation implicating moral integrity. 81 N.Y.2d at 135, 596 N.Y.S.2d 746, 612 N.E.2d 1213. Trespass is a very different offense from one involving sexual abuse. In *Matter of Quaranta v. Jacobson*, the correction officer was convicted of unlawful possession of a firearm, punishable by imprisonment of only up to one year. 167 Misc.2d 1035, 641 N.Y.S.2d 1013 (1996). Again, this offense does not implicate the same moral issues as sexual abuse, which courts have characterized as particularly "heinous." *E.g.*, *Eze v. Senkowski*, 321 F.3d 110, 112 (2d Cir.2003). Indeed, Whitfield does not even argue that his offense falls within the same category as those in *Duffy* and *Quaranta*.

*Dwyer v. Regan*, 777 F.2d 825 (2d Cir. 1985), is inapplicable to the present case. 777 F.2d 825 (2d Cir.1985) since it does not involve employment termination under POL § 30, but rather the elimination of a government office. Furthermore, the Second Circuit explicitly "rejected" "the proposition that a state must routinely provide pretermination hearings for employees whose positions are targeted for elimina-

tion," holding that a hearing is only necessary when an employee contends that this elimination is "but a sham and pretext for the deprivation of his property right." *Id.* at 833. Here, Whitfield's position was not eliminated, and his termination was based on his concrete conviction of a crime.

## B. *Defendants' Delay and Election of Disciplinary Proceedings*

However, Defendants moved to terminate Whitfield's employment, pursuant to POL § 30(1)(e), two and a half years after his conviction and after the commencement of disciplinary proceedings against him and several rounds of negotiation. Whitfield was convicted of sexual abuse in the third degree on March 30, 2000. At the time, the Defendants did not invoke POL § 30(1)(e) and did not even suspend Whitfield, permitting him to continue working as a Corrections Officer. The DOC also counseled Whitfield after his conviction and after one session determined that no further counseling was needed. Defendants then engaged Whitfield in a lengthy negotiation process. The DOC offered him two negotiated plea settlements, on June 8, 2000 and February 13, 2002, which Whitfield accepted and were later rejected by the Office of the Correction Commissioner. On August 30, 2000, the administrative law judge assigned to the case recommended that the DOC "further investigate the circumstances of the underlying criminal matter." (Compl.¶ 43.) The parties agreed to commence a disciplinary trial on November 11, 2000, but the DOC requested and was granted two adjournments of the trial date. On August 12, 2002, the DOC terminated Whitfield's employment by letter, declaring his office vacant pursuant to POL § 30(1)(e). Whitfield claims that Defendants effected his termination purely for administrative convenience.

POL § 30(1) does not grant Defendants the authority to delay *automatic* termi-

nation of public office in order to engage in negotiations or commence disciplinary proceedings. It states, "Every office *shall be vacant upon the happening* of . . . [the officer's] conviction of a felony, or a crime involving the violation of his oath of office." (emphasis added). In fact, POL § 30(1) avoids due process problems precisely because this termination is automatic. As *Duffy* explained, POL § 30(1) does not give "the Commissioner unbridled discretion" or "risk the potential for arbitrary government action" because a factual determination requiring a hearing is unnecessary. *Duffy*, 81 N.Y.2d at 133, 596 N.Y.S.2d 746, 612 N.E.2d 1213. Furthermore, property interests in employment are no longer vested in the officer upon the instant when POL § 30(1)'s conditions are violated. *E.g.*, *Greene*, 683 F.2d at 34; *Weissinger*, 704 F.Supp. at 352.

■ By failing to invoke POL § 30(1) immediately upon Whitfield's conviction and instead electing a disciplinary process under CSL § 75, Defendants indicated that Whitfield's offense is insufficient for automatic termination under POL § 30(1)(e), and that a factual hearing would be necessary. The ALJ called for exactly this type of factual determination, recommending that the DOC "further investigate the circumstances of the underlying criminal matter." (Compl.¶ 43.)

Once deciding that Whitfield's offense does not fall under the purview of POL § 30(1)(e) and that CSL § 75 disciplinary proceedings would be more appropriate, Defendants cannot later seek to revoke this determination in order to avoid the procedural requirements of CSL § 75(1). POL § 30(1) does not provide Defendants with discretion as to the timing of termination or with the authority to change their mind upon further investigation—or, for that matter, to engage in any factual investigation at all. Defendants can neither suddenly decide to invoke POL

§ 30(1)(e) at the end, nor in the middle of disciplinary proceedings. Moreover, expecting employees to continue working with the threat of immediate termination constantly hanging overhead would implicate due process concerns.

### CPLR Article 78

Whitfield further argues that his termination from public office was arbitrary and capricious under CPLR § 7801. CPLR § 7801 allows a petitioner to challenge a final determination of a governmental body or officer when there is "no rational basis for the exercise of discretion or the action complained of is 'arbitrary and capricious.'" *Matter of Pell v. Bd. of Educ.*, 34 N.Y.2d 222, 231, 356 N.Y.S.2d 833, 313 N.E.2d 321 (1974) (citations omitted). As Defendants did not properly terminate Whitfield from public office under POL § 30(1), it is unnecessary to reach this argument.

### Conclusion

The motion to dismiss the complaint is thus denied.

It is so ordered.