805 F.2d 767
 55 USLW 2308
 Billy Allen SKEETS, Appellee,
v.
Roy L. JOHNSON, Individually and Chief of Weights Division,
Arkansas State Highway and Transportation Department; Henry
Gray, Individually and Director of Highways and
Transportation of the Arkansas State Highway Commission;
George Kell, Individually and Ex-Member of the Arkansas
State Highway Commission; David Solomon, Individually and
Ex-Member of the Arkansas State Highway Commission; Patsy
L. Thomasson, Individually and Member of the Arkansas State
Highway Commission; James A. Branyon, Individually and
Ex-Member of the Arkansas State Highway Commission; Festus H.
Martin, Jr., Individually and Ex-Member of the Arkansas
State Highway Commission; Raymond Pritchett, Individually
and a Member of the Arkansas State Highway Commission;
Bobby Hopper, Individually and a Member of the State Highway
Commission; Ron Harrod, Individually and a Member of the
State Highway Commission; and Dalton Farmer, Individually
and a Member of Arkansas State Highway Commission, Appellants.
 No. 85-1761.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 14, 1986.
Decided Nov. 12, 1986.
Rehearing En Banc Granted Dec. 18, 1986.
 
 1
 Bill S. Clark, Little Rock, Ark., for appellants.
 
 
 2
 Cliff Jackson, Little Rock, Ark., for appellee.
 
 
 3
 Before McMILLIAN and BOWMAN, Circuit Judges, and HANSON,* Senior District Judge.
 
 
 4
 HANSON, Senior District Judge.
 
 
 5
 Before the court is an appeal from the decision of the district court granting Skeets' summary judgment motion, holding that his termination from employment with the Arkansas State Highway and Transportation Department deprived him of due process in violation of 42 U.S.C. Sec. 1983 and reinstating him with full backpay. We affirm the decision of the district court.[1]
 
 I. BACKGROUND
 
 6
 Skeets had been an at will employee of the Arkansas State Highway Commission for ten years. On April 10, 1979 he was summarily discharged from his job by appellant Johnson for "dereliction on duty." Although Skeets ceased all official duties on that day, he continued to draw vacation pay until May 18, 1979.
 
 
 7
 At the time of Skeets' discharge, the Department's employee handbook provided for grievance procedures including an impartial hearing, a thorough investigation, and a final decision in writing from the director. The procedures also provided that the failure of the Department to grant an aggrieved employee the specified rights would advance the grievance to the next step in the process.
 
 
 8
 Based on stipulated facts, the district court found that Skeets had sufficiently invoked his rights under the procedures when he requested permission from Johnson "to tell his side of the story." The Court also found that Skeets had not been given an impartial hearing or a thorough investigation prior to notification of his termination, nor did Johnson advise Skeets to submit his complaint in writing or offer to assist him in preparing the complaint. The court also found that Johnson's refusal to provide Skeets with an impartial hearing and thorough investigation, as provided in Step 1 of the grievance procedure, automatically advanced the grievance to the next step. As a result, the court concluded that Skeets had a protectable property interest in his continued employment. The court therefore held that, because Skeets sought the equitable remedy of reinstatement with backpay, it was not necessary to inquire into the merits of the underlying dispute, and ordered that Skeets be reinstated with full backpay. 609 F.Supp. 793, 795-98 (E.D.Ark.1985).
 
 II. DISCUSSION
 A. Property Interest
 
 9
 Whether Skeets has a protectable property right in his continued employment is initially a matter of state law. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The Arkansas Highway Commission is authorized "[t]o establish a merit system under the merit council * * *." Ark.Stat. Sec. 76-201.5(i) (1981). The Commission is also empowered "[t]o investigate * * * official conduct of department personnel." Ark.Stat. Sec. 76-201.5(g). In 1981 the Arkansas Legislature established a Merit Board to hear appeals from state agencies with regard to state employee matters. Ark.Stat. Secs. 12-3901 et seq.; but see Patton v. Ragland, 282 Ark. 231, 668 S.W.2d 3 (1984) (Sec. 12-3905(2) an unconstitutional delegation). Specifically excluded from Merit Board review are matters before the Arkansas State Highway Commission and the Arkansas State Highway and Transportation Department. Ark.Stat. Sec. 12-3907. Although Skeets is excluded from Merit Board review, it nonetheless appears that the Legislature intended there to be a mechanism to review Highway Department employee disputes such as his.
 
 
 10
 Under Arkansas law, in the absence of some alteration of the basic employment relationship, an employee for an indefinite term is subject to dismissal at any time without cause. Griffin v. Erickson, 277 Ark. 433, 642 S.W.2d 308, 310 (1982); see also Scholtes v. Signal Delivery Service, Inc., 548 F.Supp. 487, 491-94 (W.D.Ark.1982). The Arkansas Supreme Court recently declared that "[w]e have clearly stated that we will reexamine our [employment at will] doctrine when we are presented with a case in which the contract of employment provides for discharge only for cause and the employee is discharged arbitrarily or in bad faith." Gaulden v. Emerson Electric Co., 284 Ark. 149, 680 S.W.2d 92, 94 (1984). Earlier in Jackson v. Kinark Corp., 282 Ark. 548, 669 S.W.2d 898 (1984), the Arkansas Court had considered, but decided the case on other grounds, whether an employee handbook created a contract of employ-giving rise to a cause of action for wrongful discharge. Id. at 899.
 
 
 11
 An employee handbook can create a property interest if it reflects a de facto policy of established guidelines to be followed prior to dismissal. See Gerrin v. Hickey, 464 F.Supp. 276, 280 (E.D.Ark.1979); see also Perry v. Sindermann, 408 U.S. 593, 602-03, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972).
 
 
 12
 In this case the Personnel Manual (hereinafter "Manual") was submitted as Exhibit B to the district court with defendants' motion for partial summary judgment, which had asserted Skeets had no property right to continued employment. The district court denied defendants' motion. Skeets now asserts that, although not referred to in the district court's ruling on plaintiff's summary judgment motion, the Manual is part of the record on appeal. We would agree. Because the summary judgment motions of each party deal with the identical issue, whether Skeets had a property interest in continued employment, we can see no prejudice to either party in considering the Manual on appeal. See F.R.App.P. 10(a). The dissent characterizes our consideration of the Manual as raising a new issue on appeal. Although it is certainly true that Skeets only argued below the grievance procedures created his property right, we believe it would be a strained reading to divorce the grievance procedures from the rest of the Manual of which they are a part. On the contrary, we believe the grievance procedures can only be understood in pari materia with the other provisions in the Manual.
 
 
 13
 On July 20, 1972, the Director of Highways for the Arkansas Highway Commission provided Highway Department employees with the Manual, and enclosed a letter stating:
 
 
 14
 This manual has been prepared to provide information for supervisors and other employees. It * * * contains information on all personnel policies, procedures, and employment practices. * * *
 
 
 15
 To the supervisor, it serves as a guide to the proper administration of personnel. To the employee, it is a source of information on employee services and conduct. By reading and referring to this manual, all employees may fully inform themselves on matters affecting them personally.
 
 
 16
 Id. (emphasis added). Section 106(C) of the Manual goes on to state, with regard to employee conduct, that "[i]t has long been the practice of the Highway Department to counsel with and help any employee whose performance is not satisfactory." Manual at 4. Section 106(C) also lists the grounds for immediate termination of employees whose work is "unsatisfactory." One of the grounds listed is for "[d]ereliction of duty." Id.
 
 
 17
 The Manual in Sec. 205(10) explains that in filling out Form AH125, the personnel action form, "[a]ll AH125's must have in the 'Remarks' section, a thorough, yet concise, explanation as to the justification for the proposed action." Manual at 33. Section 206(4) explains that in completing Form AH125 for terminating an employee "the reason for separation and the quality of the employee's service, whether satisfactory or unsatisfactory, should be entered in 'Remarks.' " Manual at 38. Upon Skeets' termination, the AH125 "Remarks" portion states as the reason for discharge merely "[d]ereliction of duty."
 
 
 18
 We believe that it is apparent, by virtue of the statute providing for a merit review mechanism and by the Manual stating reasons for termination and the specific manner in which employees can be terminated, that Skeets was more than an at will employee when he was summarily fired.
 
 
 19
 Against this background, we must consider Skeets' contention that the grievance procedures provide him with a property right to continued employment. The procedures appear at Sec. 133 of the Manual, as amended by Minute Order on June 25, 1975, and provide a method for employees to grieve working conditions. Step 1 states: "It is the duty of the supervisor to give an impartial hearing [and] make a thorough investigation * * *." The procedures also provide for an impartial hearing and thorough investigation when the employee "take[s] this matter up first with his/her supervisor." The procedures do not specify whether the request for the hearing should be in writing or whether it can be made orally. As a result, it appears to have been reasonable for the district court to conclude that Skeets' oral request had sufficiently invoked the grievance procedures so as to trigger his right to continued employment until he received his pretermination investigation and hearing.[2]
 
 
 20
 The grievance procedures further provide that "[i]f the Department fails to meet and/or provide for any grievance hearing within the time limits, the grievance will automatically be advanced to the next step." In addition, the procedures state that the final decision will be made by the Director and that after a subordinate provides him with a written report concerning the grievance, the Director's "final decision will be sent in writing to the employee."
 
 
 21
 We recently held in Hogue v. Clinton, 791 F.2d 1318 (8th Cir.1986), that grievance procedures similar to those at issue in this case do no more than create a unilateral expectation of continued employment insufficient to entitle a discharged Arkansas state employee to a pretermination hearing. Central to the panel's holding was that grievance procedures which "do not restrict or even guide [the] agency's decision making by allowing for termination only under certain circumstances or for specific reasons" do not create a property interest in continued employment. Id. at 1324. We believe that Hogue is distinguishable from this case.
 
 
 22
 The central difference between Skeets and Hogue is in the quantum of due process each employee was afforded. In Hogue, the record reveals that at the time he was terminated he was presented with a list of allegations, at which point he pursued an appeal. During the appeal process he was accorded "some kind of a hearing" at which the allegations against him were discussed. Roth, 408 U.S. at 569-70, 92 S.Ct. at 2705. He filed his lawsuit only after his appeal to the Merit Council dissolved, apparently in light of the Arkansas Supreme Court decision in Patton v. Ragland, 282 Ark. 398, 668 S.W.2d 3 (1984), that the statute providing for the Council was unconstitutionally vague. Upon this record the majority of the panel concluded that Hogue had no property right to a due process pretermination hearing. Hogue, 791 F.2d at 1325.
 
 
 23
 By contrast, Skeets was called into his supervisor's office and terminated, the only reason stated being "dereliction of duty." Skeets requested a hearing in order to tell his side of the story. The district court found that this request was denied and that he was at no point presented with a list of the charges against him, nor was he able to confront those who provided evidence against him. In addition, the investigation which formed the basis of his dismissal was not completed and submitted to the Director until two months after Skeets had been terminated. He did not obtain a copy of this report until in discovery in preparation for trial. These irregularities come in the face of grievance procedures which provide in Step 1 for a thorough investigation and impartial hearing, and that the grievance will automatically advance to the next step if the grievance procedure is not provided by the Department.
 
 
 24
 The factual postures of these cases demonstrate the differences between them. In Hogue, the claimant asserted a property right to a due process pretermination hearing in spite of the fact that he had been presented with a list of the charges against him and had been able to appeal the termination as provided in the grievance procedures. It would therefore appear that what Hogue claimed was a due process right to the "specific decision" that he be reinstated with backpay. This conclusion follows from the Hogue reference to Goodisman v. Lytle, 724 F.2d 818, 820 (9th Cir.1984), that "the expectation of a specific decision is not enhanced enough to establish a constitutionally protected interest in the procedures." Hogue, 791 F.2d at 1324.
 
 
 25
 Skeets, on the other hand, appears to be asking for an opportunity to have any kind of a hearing, rather than a hearing at which a specific decision would result. On this basis, we would hold that the grievance procedures in this case presented Skeets with a property interest in a thorough investigation and hearing. That is, the grievance procedures, by virtue of the fact that a grievance advances to the next step if the Department fails to provide the required process, amount to a restriction on agency discretion which the Hogue court found to be necessary to trigger a sufficient property interest.
 
 
 26
 We are well aware that our holding seems to narrow some of the language in Hogue, but we cannot believe that Hogue is a signal for us to countenance the complete deprivation of even the rudiments of due process as occurred in this case. The grievance procedures in this case create a reasonable expectation that a grievance will be handled fairly. They by no means suggest that a particular decision will result, but they do create a mutually explicit understanding that had Skeets been allowed to proceed with his grievance he would have received the quantum of process that he was due.
 
 
 27
 The district court relied on Wilson v. Robinson, 668 F.2d 380 (8th Cir.1981), to establish that grievance procedures may provide an aggrieved employee with a due process right to a pretermination hearing. Appellants assert that in Wilson the procedures dealt specifically with the process to be followed prior to job terminations while the instant procedures apparently do not. We agree with the district court that this distinction is not "fatal." As the Supreme Court stated in Perry v. Sindermann:
 
 
 28
 We have made clear in Roth that "property" interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, "property" denotes a broad range of interests that are secured by "existing rules or understandings." A person's interest in a benefit is a "property" interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.
 
 
 29
 408 U.S. at 601, 92 S.Ct. at 2699 (citations omitted). Although there may be no explicit provision for a hearing at the instance of an employment termination, that right is not expressly denied and may be inferred from the grievance procedures. We believe that the grievance procedures can be construed as being applicable to employment terminations such as at issue.
 
 
 30
 We conclude that it would have been reasonable for Skeets to believe that he would only be terminated for one of the grounds listed in the Manual and only after he had been given a thorough, concise explanation, in effect what appears to be termination only for cause. Taken with the grievance procedures providing a mechanism to appeal employee matters, we conclude Skeets had a right to a hearing and investigation before he was terminated.[3] Today's holding is consistent with those of other courts which have considered whether grievance procedures can create an expectation of continued employment. See Beckham v. Harris, 756 F.2d 1032, 1037 (4th Cir.1985) (discharge is in violation of procedural rules adopted by employer specifically designed to protect employees from immediate discharge); Zeigler v. Jackson, 716 F.2d 847, 849 (11th Cir.1983) (finding no property right because no ground stated upon which dismissal must be based); Gleason v. Board of City Commissioners, 620 F.Supp. 632, 634-35 (D.Colo.1985) (property interest created because employee could only be terminated for cause and decision to terminate reviewable); Jaffe v. Federal Reserve Bank of Chicago, 586 F.Supp. 106, 107 (N.D.Ill.1984) (dicta) (grievance procedure may constitute rules or understandings constituting claim of entitlement to benefit).
 
 
 31
 Nor do we find convincing the dissent's assertion that we foist process into substance. Even if we were as certain as the dissent in demarcating where process ends and substance begins, we believe the procedures at issue would create the kind of mandatory limitation on the employer's discretion which makes any such distinction not especially meaningful. See Rogers v. Masem, 788 F.2d 1288, 1294-95 (8th Cir.1985); see also Hogue, 791 F.2d at 1326 (Lay, C.J., dissenting) (grievance procedures create a contract between Hogue and employer transforming procedure into substantive expectancy).
 
 
 32
 It is apparent from this record that Skeets was not accorded adequate process. In Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the Supreme Court held that when a public employee has a property interest in his continued employment, the due process clause requires that, prior to termination, the employee must be given oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity to respond. Id. 105 S.Ct. at 1495. Skeets has never had the opportunity to challenge the report or to be confronted with the witnesses whose direct and hearsay testimony form the basis of the report. We would therefore conclude that Skeets was at no point given adequate procedural due process to challenge his termination.
 
 
 33
 Appellants assert that Skeets waived his due process rights under the grievance procedures when he failed to submit a grievance in writing to the Department.[4] From the stipulated record it is apparent that Skeets attempted orally to invoke the grievance procedures. We would agree with the district court that once his oral request to rebut the charges against him had been denied, it was unnecessary for the plaintiff to go further. We therefore conclude that he did not abandon his rights under the grievance procedures.
 
 B. Equitable Relief
 
 34
 Even though the district court found that Skeets had been deprived of his property interest in his employment without procedural due process, the appellants argue that he must demonstrate that the substantive allegations against him were untrue before he could be entitled to any relief. They argue that the district court misapplied Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), by not inquiring into whether Skeets would have been terminated even if he had been afforded adequate procedural due process.
 
 
 35
 The district court chose to follow the narrow interpretation of Carey set out by another Arkansas district court in Shaw v. Gwatney, 604 F.Supp. 880 (E.D.Ark.1985), vacated in part on other grounds and aff'd in part, 795 F.2d 1351 (8th Cir.1986). In Shaw, Chief Judge Eisele had held that the court need not reach the merits of the substantive Sec. 1983 issues in a case in which the plaintiff seeks only equitable relief. 604 F.Supp. at 887.
 
 
 36
 The Court in Carey held that an employee alleging that a discharge resulted in a deprivation of liberty could only recover nominal damages unless it could be shown that a pretermination hearing would have changed the result or that the plaintiff could demonstrate actual damages such as emotional distress. 435 U.S. at 266-67, 98 S.Ct. at 1053-54. Carey involved the measure of damages due to two students suspended from school without the benefit of presuspension procedures. The Court concluded that if on remand the district court would find that the suspensions were justified, then the students would not be able to recover damages for the procedural deprivations. Id. at 260, 98 S.Ct. at 1050.
 
 
 37
 In reaching its conclusion, the Court acknowledged that the proper measure of damages for a constitutional injury must be evaluated against the nature of the constitutional right in question. Id. at 264-65, 98 S.Ct. at 1052-53. Therefore, an application of the Carey damage rules to the instant case must take into account the nature of the constitutional injury sustained by the students suspended in Carey. It is unclear from the Court's opinion whether the interest at stake was a liberty or property interest. However, it is apparent that the students' suspensions were more in the nature of deprivations of liberty than of property. Hogue, 791 F.2d at 1327 (Lay, C.J., dissenting). That is, the injury is more similar to a stigma than a deprivation of an expectation to a continuing benefit, employment with the state. The harm that ensues from a short suspension from school is in the potential adverse treatment of the students by their teachers because of the perception that the students are troublemakers. Id. (Lay, C.J., dissenting). Moreover, the kind of name-clearing hearing denied the students in Carey generally does not involve the issue of whether the termination was appropriate. Rather, the issue is whether the reasons disclosed for the discharge resulted in a stigma and were false. Hogue, 791 F.2d at 1327 (Lay, C.J., dissenting). See Pollock v. Baxter Manor Nursing Home, 706 F.2d 236, 238 (8th Cir.) (McMillian, J., dissenting), rev'd on reh'g, 716 F.2d 545 (8th Cir.1983); Bishop v. Tice, 622 F.2d 349, 357-58 n. 17 (8th Cir.1980). Therefore, if the discharged employee had no right to continued employment, the residual right to the retention of the employee's good name is not enough in itself to trigger more than an award of nominal damages. In the liberty deprivation cases, therefore, what is compensated is the loss to the person's reputation, not the loss of employment. Hogue, 791 F.2d at 1328 (Lay, C.J., dissenting).
 
 
 38
 When, as in this case, the employee has established he has a property right to continued employment, the proper measure of damages is the value of the lost employment--in this case reinstatement and backpay. This is because the "cause" hearing focuses not on the stigma attached to the deprivation, but upon whether the employee can be terminated for cause.
 
 
 39
 The Court in Carey suggests at footnote 15 its disfavor with cases from the Fourth and Fifth Circuits in which the courts awarded backpay for public employees discharged with cause, but without procedural due process. Carey, 435 U.S. at 260 n. 15, 98 S.Ct. at 1050 n. 15. Even though we need not reach this issue in light of our earlier determination that Skeets was not terminated for cause, we believe the Court's language must necessarily be circumscribed as no longer having much vitality after its decision in Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Loudermill requires "some kind of a hearing" before the discharge of the employee. Id. 105 S.Ct. at 1493 (quoting Roth, 408 U.S. at 569-70, 92 S.Ct. at 2705). The Court in Loudermill stated that
 
 
 40
 affording the employee an opportunity to respond prior to termination would impose neither a significant administrative burden nor intolerable delays. Furthermore, the employer shares the employee's interest in avoiding disruption and erroneous decisions; and until the matter is settled, the employer would continue to receive the benefit of the employee's labors. It is preferable to keep a qualified employee on than to train a new one. A governmental employer also has an interest in keeping citizens usefully employed rather than taking the possibly erroneous and counter-productive step of forcing its employees onto the welfare rolls. Finally, in those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay.
 
 
 41
 Id. 105 S.Ct. at 1495. We believe that applying Carey to the case at bar would effectively deny Skeets of his right to a "cause" pretermination hearing because "without the deterrent of a backpay award, no incentive remains for the employer to do anything more than provide only a post-termination hearing." Hogue, 791 F.2d at 1328 (Lay, C.J., dissenting).
 
 
 42
 We therefore hold that because Skeets had a property right to continued employment until his "cause" hearing, the district court was correct in awarding him reinstatement and backpay until a proper hearing is held.
 
 III. OFFICIAL AND INDIVIDUAL CAPACITY
 
 43
 Appellants assert that the district court's award of backpay is barred by the Eleventh Amendment. The district court's order awarding reinstatement with backpay does not state whether it is against the appellants in their official capacities or in their individual capacities. In its earlier April 21, 1983 order, the district court dismissed the State of Arkansas and the Arkansas State Highway Commission as immune under the Eleventh Amendment. Apparently remaining after the court's order were the appellants, sued in their individual and official capacities. We would conclude, because the court below did not specify in what capacities its backpay and reinstatement award would run against the defendants, it would be inappropriate for this Court to make any determination. Rather, it is for Skeets to attempt to enforce his award against the defendants. We therefore do not reach the issue of whether the court's award is violative of the Eleventh Amendment.
 
 IV. CONCLUSION
 
 44
 For all of the reasons stated above, we affirm the decision of the district court.
 
 
 45
 BOWMAN, Circuit Judge, dissenting.
 
 
 46
 The Court concludes that Skeets, an at-will state employee, possesses a constitutionally protected "property" right to continued employment because of the grievance procedures set forth in the Arkansas State Highway Department's personnel manual. After then finding that Skeets was not afforded procedural due process when he was discharged, the Court concludes that the District Court may order reinstatement with backpay without first determining whether Skeets would have been dismissed even if he had been afforded adequate procedural due process. Finally, the Court decides not to reach the Eleventh Amendment issue raised by the backpay award against the defendant state officials. For the reasons discussed below, I respectfully dissent from each of these conclusions.
 
 I.
 
 47
 The Court concludes in Part II.A. of its opinion that Skeets possesses a constitutionally protected "property" right to continued employment by virtue of a grievance procedure set forth in the personnel manual of the Arkansas State Highway Department. It is important first to understand what is and what is not involved in this case. The parties submitted to the District Court a comprehensive list of stipulated facts. As stated in the District Court's opinion, the parties stipulated, among other things, that "[p]laintiff's job was not tenured, and under Arkansas law he was an at-will employee whose employment could be terminated at any time. Plaintiff's only claimed source of a property interest is the department's grievance procedures." Skeets v. Johnson, 609 F.Supp. 793, 794 (E.D.Ark.1985). In view of that stipulation, I am troubled by the Court's conclusion that Skeets "was more than an at will employee" who could "only be terminated for one of the grounds listed in the Manual." Ante at 771, 773 (holding that Skeets was subject to "termination only for cause"). Such a conclusion directly contradicts and consciously ignores the parties' stipulated fact that under Arkansas law Skeets could be terminated at any time without cause, and involves the Court in an interpretation of state law (and, as applied by the Court, an extension of state law) that properly should be made by the District Court in the first instance.
 
 
 48
 In addition, though section 106 does list some reasons for termination, nowhere in the manual does it state that those are the only reasons for termination. In any event, because the existence of specific, exclusive reasons for termination--a proposition that again would contradict the parties' stipulated fact--would present a totally different situation, I believe that any reference to or reliance on section 106 is irrelevant and improper. Moreover, the Court's theory and analysis, based on section 106, was neither presented to nor relied on by the District Court, and thus it cannot properly be asserted on this appeal. See Singleton v. Wulff, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); St. Louis Developmental Disabilities Treatment Center Parents' Association v. Mallory, 767 F.2d 518, 521 (8th Cir.1985) (noting general rule that a federal appellate court "will consider a case only on the theory upon which it was tried in the district court"). In my view, the Court has raised a new issue and has revised the record on appeal in reaching its conclusion that Skeets has a property right to his continued employment.
 
 
 49
 In reaching its decision, the Court relies on Wilson v. Robinson, 668 F.2d 380 (8th Cir.1981). In Wilson, a county ordinance provided for certain pre-termination procedures, including two-week notice, written reasons for the discharge, and a right of appeal. A panel of this Court reserved decision on whether the ordinance created "substantive rights" to continued employment, id. at 382 n. 2, but concluded that the "procedural rights" created by the ordinance were sufficient in themselves to establish a "property" right: "There can be no doubt that this ordinance creates an expectation of continued employment sufficient to require that procedural due process be afforded to county employees prior to termination." Id. at 382; see also Gerrin v. Hickey, 464 F.Supp. 276, 280 (E.D.Ark.1979) ("Applicable personnel regulations can create a protected interest if they reflect a de facto policy of established guidelines to be followed prior to dismissal."). In my view, the reasoning used in Wilson and followed by the Court herein stands procedural due process analysis on its head and is in direct conflict with recent decisions from both the Supreme Court and this Court.
 
 
 50
 Since 1972, the Supreme Court has utilized a two-step procedural due process analysis. The threshold inquiry focuses on whether the challenged governmental action deprives the plaintiff of "life, liberty, or property." In Board of Regents v. Roth, 408 U.S. 564, 576, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972), the Supreme Court stated that "[t]he Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." The Court explained that
 
 
 51
 [t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it....
 
 
 52
 Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.
 
 
 53
 Id. at 577, 92 S.Ct. at 2709. Only when it has been established that there is an underlying substantive "property" right created by state law or by other "rules or mutually explicit understandings," Perry v. Sindermann, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972), does the inquiry proceed to the second step of the analysis--what process is due. Without an underlying substantive right, the second step is never considered and an individual is not entitled, as a matter of federal constitutional law, to any process whatever.
 
 
 54
 In the context of public employment discharges, the Supreme Court has made it clear that the underlying substantive property right involved is a right to continued employment. See, e.g., Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 1491-92, 84 L.Ed.2d 494 (1985) ("Respondents' federal constitutional claim depends on their having had a property right in continued employment."). Thus, in this case, Skeets must show that he had an underlying substantive right to continued employment in order to establish a constitutionally protected property right. That he cannot do. Indeed, Skeets stipulated that under Arkansas law he was an at-will employee who could be discharged at any time without cause. See Newton v. Brown & Root, 280 Ark. 337, 658 S.W.2d 370, 371 (Ark.1983) (stating that "the right of the employer to terminate the employment is unconditional and absolute"). In my view, that stipulation is dispositive of the case. See Bishop v. Wood, 426 U.S. 341, 345 n. 8, 96 S.Ct. 2074, 2078 n. 8, 48 L.Ed.2d 684 (1976) (stating that "a holding that as a matter of state law the employee 'held his position at the will and pleasure of the [employer]' necessarily establishes that he had no property interest"); Hogue v. Clinton, 791 F.2d 1318, 1323-25 (8th Cir.1986); see generally J. Nowak, R. Rotunda & J. Young, Constitutional Law 547 (2d ed.1983) (stating that "if one occupies a position that applicable law defines as terminable for any reason, that person can be discharged without the requirement of fair procedures").
 
 
 55
 Notwithstanding Skeets's at-will status, the Court holds that "the grievance procedures ... presented Skeets with a property interest in a thorough investigation and hearing" before he could be terminated. Ante at 772. The Supreme Court, however, never has held or even suggested that an expectation of review alone is sufficient to create a property right for procedural due process purposes. Moreover, our Court rejected that very contention in Hogue, 791 F.2d at 1324-25. The result and rationale in Hogue are consistent with recent Supreme Court precedent, most of which has been developed in the context of claims by state prisoners to a constitutionally protected "liberty" interest by virtue of procedural provisions in the state parole release statute and regulations. In case after case, the Court has rejected the proposition that procedures alone can create a substantive right entitled to procedural due process protection.
 
 
 56
 The Court's language in Olim v. Wakinekona, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) is particularly instructive.
 
 
 57
 Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement. If officials may transfer a prisoner "for whatever reason or for no reason at all," there is no such interest for process to protect. The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right.
 
 
 58
 Id. at 250-51, 103 S.Ct. at 1748 (citations and footnotes omitted).
 
 
 59
 In Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), the Supreme Court again rejected the analysis employed by our Court herein. In Hewitt, a state prisoner contended that the mere fact the State had created a "careful procedural structure" to regulate its prison administration was sufficient to find a protected substantive (liberty) interest. The Court disagreed.
 
 
 60
 The creation of procedural guidelines to channel the decisionmaking of prison officials is ... a salutary development. It would be ironic to hold that when a State embarks on such desirable experimentation it thereby opens the door to scrutiny by the federal courts, while States that choose not to adopt such procedural provisions entirely avoid the strictures of the Due Process Clause. The adoption of such procedural guidelines, without more, suggests that it is these restrictions alone, and not those federal courts might also impose under the Fourteenth Amendment, that the State chose to require.
 
 
 61
 Id. at 471, 103 S.Ct. at 871.
 
 
 62
 As these and other cases demonstrate, the mere fact that the State has created "simple procedural guidelines," id., to channel its decision making is not sufficient to create a substantive interest entitled to federal constitutional protection under the Due Process Clause. See Olim, 461 U.S. at 250 n. 12, 103 S.Ct. at 1748 n. 12 (citing with approval other cases holding that "an expectation of receiving process is not, without more, a liberty interest"); Hogue, 791 F.2d at 1324 n. 10 ("That an employee can expect review upon termination does not in itself create a legitimate expectancy of continued employment."); Clemente v. United States, 766 F.2d 1358, 1364-65 (9th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 881, 88 L.Ed.2d 917 (1986); Henderson v. Sotelo, 761 F.2d 1093, 1097-98 (5th Cir.1985); Zeigler v. Jackson, 716 F.2d 847, 849 (11th Cir.1983); Vruno v. Schwarzwalder, 600 F.2d 124, 130 (8th Cir.1979); Colm v. Vance, 567 F.2d 1125, 1130 n. 6 (D.C.Cir.1977) ("Neither longevity nor procedural prerequisites to a valid separation alone necessarily creates a protected property interest in one's employment."); Cato v. Collins, 539 F.2d 656, 660-61 (8th Cir.1976); Cusumano v. Ratchford, 507 F.2d 980, 985-86 (8th Cir.1974), cert. denied, 423 U.S. 829, 96 S.Ct. 48, 46 L.Ed.2d 46 (1975); cf. Loudermill, 105 S.Ct. at 1493 (stating that "[t]he categories of substance and procedure are distinct" and that "[p]roperty cannot be defined by the procedures provided for its deprivation"); Slotnick v. Staviskey, 560 F.2d 31, 34 (1st Cir.1977) ("The simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension."); see generally Simon, Liberty and Property in the Supreme Court: A Defense of Roth and Perry, 71 Calif.L.Rev. 146, 184-87 (1983).
 
 
 63
 Instead, it is only when the procedural requirements are intended to impose (and, in fact, contain) significant, substantive restrictions on the discretion of state officials in the decision-making process that the State creates and an individual acquires a constitutionally protected interest. See Loudermill, 105 S.Ct. at 1491-92 & n. 4 (state statute specified grounds for termination); Olim, 461 U.S. at 249, 103 S.Ct. at 1747 ("[A] State creates a protected liberty interest by placing substantive limitations on official discretion."); Hewitt, 459 U.S. at 471-72, 103 S.Ct. at 871 (stating that "the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates" creates a protected interest); Hogue, 791 F.2d at 1324 ("Grievance procedures that do not establish any grounds upon which termination must be based do not in themselves create a property interest in employment."); Rogers v. Masem, 788 F.2d 1288, 1294-95 (8th Cir.1985); Payne v. Ballard, 761 F.2d 491, 493 (8th Cir.1985) (stating that "[t]here must also be an undertaking ... by the employer not to discharge the employee for a certain fixed period of time, or unless certain conditions are met"); Goodisman v. Lytle, 724 F.2d 818, 820-21 (9th Cir.1984); Glenn v. Newman, 614 F.2d 467, 471-72 (5th Cir.1980) (city regulations listing specific reasons justifying dismissal construed as permitting termination only "for cause").
 
 
 64
 The grievance procedures in the present case contain no such restrictions. Indeed, the Court mentions no provisions in the grievance procedures that in any way place "significant substantive restrictions" on defendants' discretion in deciding to discharge Skeets or that even arguably "establish any grounds upon which termination must be based." Hogue, 791 F.2d at 1324.
 
 
 65
 The grievance procedure does contain a paragraph providing that "[w]hen an employee thinks or feels that any condition affecting his ... employment is unjust, inequitable, a hindrance to the satisfactory operation or creates a problem, the employee shall use the following procedures for the solution of such problems." A similar provision in the grievance procedure at issue in Hogue was deemed insufficient to create a property interest. The Court there stated:
 
 
 66
 Here, the Grievance Policies and Procedures merely provide an avenue of appeal for an employee discharged from the [state agency]; they do not restrict or even guide that agency's decision making by allowing for termination only under certain circumstances or for specific reasons. The dissenting opinion reads into the phrase ... stating that an employee "who feels he/she has been terminated unfairly will have the right to appeal, under the following formal procedures" a requirement that an employee can be terminated only for good cause. We disagree that this provision ... "may be properly construed to impose substantive restraints on the decision to terminate." The provision creates only an expectancy of review, not of continued employment; the procedures outlined place no significant substantive restrictions on the decision-making. Under Arkansas law, because he was not employed for a definite term, Hogue was an employee at will, subject to dismissal at any time without cause. We do not see, then, how Hogue could have harbored anything more than a unilateral expectation of continued employment, insufficient to entitle him to due process protection.
 
 
 67
 791 F.2d at 1324-25 (citation and footnote omitted) (emphasis added).
 
 
 68
 The opinion of the Court in the present case ignores this language and attempts unconvincingly to distinguish Hogue.[1] The Court states that "[t]he central difference between Skeets and Hogue is in the quantum of due process each employee was afforded." Ante at 771. The Court then states that because Hogue had received "some kind of a hearing," he "had no property right to a due process pretermination hearing." Id. That, however, was not the basis for the holding in Hogue. The rationale of Hogue is straightforward: Because Hogue had no underlying substantive property right to continued employment due to his at-will status, and because the grievance procedures imposed no "significant substantive restrictions" or guidelines on the state officials' discretion in the decision-making process (e.g., "by allowing for termination only under certain circumstances or for specific reasons"), Hogue had no constitutionally protected interest entitled to procedural due process protection. The fact that Hogue had received "some kind of a hearing" simply was irrelevant to whether he had an underlying substantive right. As a matter of federal constitutional law, the result in Hogue would have been the same whether or not Hogue received a hearing or any other process. See, e.g., Henderson v. Sotelo, 761 F.2d at 1097-98 (stating that "[a] violation of such procedures, though it might give rise to some other cause of action against the employer, 'would not seem to create a property interest which otherwise did not exist' ").
 
 
 69
 Whether an individual has a substantive right to continued employment entitled to due process protection never has turned on whether or not the individual received the process that was promised him by the State. To the extent that Wilson v. Robinson, 668 F.2d 380, 382 & n. 2 (8th Cir.1981) and Gerrin v. Hickey, 464 F.Supp. 276, 280-81 (E.D.Ark.1974) hold otherwise, I believe they were wrongly decided. The theory applied in those cases effectively creates a substantive right to continued employment out of nothing more than a process devoid of any substantive content. Though this theory admittedly has been suggested by various commentators, see, e.g., L. Tribe, American Constitutional Law Sec. 10-10, at 525 (1978); Van Alstyne, Cracks in "The New Property": Adjudicative Due Process in the Administrative State, 62 Cornell L.Rev. 445, 487 (1977), to date such a right has been recognized only under state constitutions. See People v. Ramirez, 25 Cal.3d 260, 158 Cal.Rptr. 316, 320, 599 P.2d 622, 627 (1979) (holding that "freedom from arbitrary adjudicative procedures is a substantive element of one's liberty" entitled to protection under the due process clause of the California state constitution, while acknowledging that no such right exists under the Due Process Clause of the federal Constitution). As the cases cited above demonstrate, virtually every federal appellate court that has addressed the issue has rejected the analysis espoused by the Court in the present case. As the Seventh Circuit has stated:
 
 
 70
 The argument that the procedures established by the regulations can themselves be considered a liberty interest is analytically indefensible. We have repeatedly observed: "Procedural protections or the lack thereof do not determine whether a property right exists...." A liberty interest is of course a substantive interest of an individual; it cannot be the right to demand needless formality.... Of course the existence of state procedural protections is not irrelevant to a determination of whether a substantive interest exists. A state often provides for specific procedures to ensure the realization of a parent substantive right. The existence of such protections may suggest the presence of a substantive limitation on official action, and it is "not inconceivable that substantive protections could be inferred from the existence of procedural safeguards ..."; but a state created procedural right is not itself a liberty interest within the meaning of the Fourteenth Amendment.
 
 
 71
 Constitutionalizing every state procedural right would stand any due process analysis on its head. Instead of identifying the substantive interest at stake and then ascertaining what process is due to the individual before he can be deprived of that interest, the process is viewed as a substantive end in itself. The purpose of a procedural safeguard, however, is the protection of a substantive interest to which the individual has a legitimate claim of entitlement. A basic problem ... with maintaining that one has an entitlement to a state created procedural device such as a hearing is that the dimensions of the procedural protections which attach to state law entitlements are defined by federal standards. When the federal standard is applied, the "process that is due in a given instance may bear little or no resemblance to the original expectation...." Indeed, the logical flaw in the proposition is even more fundamental. If a right to a hearing is a liberty interest, and if due process accords the right to a hearing, then one has interpreted the Fourteenth Amendment to mean that the state may not deprive a person of a hearing without providing him with a hearing. Reductio ad absurdum.
 
 
 72
 Shango v. Jurich, 681 F.2d 1091, 1100-01 (7th Cir.1982) (citations omitted). In essence, the Court's holding in the present case elevates form ("procedural rights") into substance ("property" right), thus requiring more form (procedural due process). Federal precedent does not support, and I cannot agree with, such an analysis.
 
 
 73
 For the reasons stated above, I dissent from the Court's holding that Skeets possesses a substantive property right to continued employment by virtue of the grievance procedures in the Department personnel manual.[2]
 
 II.
 
 74
 Assuming arguendo that Skeets had a protected property interest and was denied procedural due process, I do not agree with the Court's holding that a federal court may award equitable relief in the form of reinstatement with backpay without first determining whether Skeets would have been discharged if he had been afforded adequate procedural due process.
 
 
 75
 In Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), the Supreme Court held that, because the right to procedural due process is "absolute" in the sense that it does not depend upon the substantive merits of the underlying allegations, the denial of procedural due process entitles the plaintiff to nominal damages without proof of actual injury. Id. at 266, 98 S.Ct. at 1053. Thus, when the deprivation of a protected interest was justified but the procedures used were constitutionally deficient, the plaintiff's constitutional rights are vindicated by an award of nominal damages plus attorney's fees. To recover substantial compensatory damages, however, a plaintiff must prove that the denial of procedural due process caused actual injury. In other words, damages cannot be presumed to flow from every deprivation of procedural due process. Id. at 260-64, 98 S.Ct. at 1050-52. Thus, Carey established a rule of actual injury and causation in regard to the awarding of other than nominal damages for a violation of procedural due process.
 
 
 76
 The Court in the present case follows the analysis suggested by Chief Judge Lay in his dissent in Hogue, 791 F.2d at 1326-29, and distinguishes Carey by drawing a distinction between "liberty" interests and "property" interests for purposes of determining the appropriate remedy. Though such an analysis is facially appealing, I believe that the Supreme Court and this Court already have spoken on the issue. In Carey the Supreme Court specifically noted with disapproval four procedural due process cases that involved a property interest rather than a liberty interest. 435 U.S. at 260 n. 15, 98 S.Ct. at 1050 n. 15. Each of those cases arose in the context of public employment discharges, and in each case the court had denied reinstatement (since in each case the discharge was justified) but nonetheless had awarded backpay. See Thomas v. Ward, 529 F.2d 916, 920 (4th Cir.1975); Burt v. Board of Trustees, 521 F.2d 1201 (4th Cir.1975); Zimmerer v. Spencer, 485 F.2d 176, 179 (5th Cir.1973); Horton v. Orange County Board of Education, 464 F.2d 536, 538 (4th Cir.1972). The Supreme Court's disapproval of those cases is compelling evidence that the Carey analysis applies with equal force to cases involving property interests, and substantially undercuts our Court's conclusion that the Carey analysis is limited to cases involving a liberty interest only.
 
 
 77
 Though the Supreme Court's language in Loudermill, 105 S.Ct. at 1495, supports to some extent the Court's analysis in the present case, I hesitate to take Loudermill as a sub silentio overruling of Carey, especially in view of the absence of any reference whatever to Carey. Moreover, an award of attorney's fees would be an adequate incentive for an employer to provide pretermination process when required. Thus, the Court's statement that without the deterrent of a backpay award no incentive remains for an employer to provide a pretermination hearing is inaccurate.
 
 
 78
 The Court's holding in the present case also is out of step with Bishop v. Tice, 622 F.2d 349 (8th Cir.1980), wherein the Court stated:
 
 
 79
 The Supreme Court seems to have rejected the view that a public employee dismissed without benefit of procedural due process is necessarily prejudiced and therefore entitled to damages in the nature of back pay. [citing Carey, 435 U.S. at 260 n. 15, 98 S.Ct. at 1050 n. 15] The district court can award damages in the nature of back pay, then, only if persuaded that [the plaintiff] would have prevailed had he received any hearing to which he was entitled.
 
 
 80
 Id. at 357-58 n. 17. The Court's holding likewise conflicts with Judge McMillian's dissenting opinion in Pollock v. Baxter Manor Nursing Home, 706 F.2d 236 (8th Cir.), rev'd on reh'g, 716 F.2d 545 (8th Cir.1983). Judge McMillian stated that
 
 
 81
 Carey requires a discharged public employee who is seeking reinstatement or backpay to prove that she would not have been discharged if she had been given a due process hearing. Ordinarily, this would require proving that the stigmatizing information is false.... The deprivation, and the nature of the damages that flow from that deprivation, must be considered as separate and distinct elements of a procedural due process cause of action. See Bishop v. Tice, 622 F.2d 349, 357-58 & n. 17 (8th Cir.1980).
 
 
 82
 706 F.2d at 238 (McMillian, J., dissenting). Judge McMillian specifically applied the Carey rule to a discharged public employee seeking "reinstatement or backpay."
 
 
 83
 The decision in the present case also conflicts with the great weight of authority in other circuits holding that under Carey an award of backpay is inappropriate if the discharge was justified. See, e.g., City of Ann Arbor v. United States Department of Labor, 733 F.2d 429, 431-32 (6th Cir.1984); New York Urban Coalition v. United States Department of Labor, 731 F.2d 1024, 1030-31 (2d Cir.1984); County of Monroe v. United States Department of Labor, 690 F.2d 1359, 1362-63 (11th Cir.1982) (stating that "[t]he injury caused by justified termination is not compensable in the form of back pay," since "[t]o award back pay in [such a] case would be to allow the procedural tail to wag the substantive dog"); Wilson v. Taylor, 658 F.2d 1021, 1033-35 (5th Cir.1981) (citing other cases); cf. Okeson v. Tolley School District No. 25, 760 F.2d 864, 869 (8th Cir.), rev'd on other grounds on reh'g, 766 F.2d 378 (8th Cir.1985).
 
 
 84
 For the reasons stated above, I dissent from the Court's affirmance of the award to Skeets of reinstatement with backpay. In my view, the case should be remanded for an evidentiary hearing. In accordance with Carey, Skeets would be entitled to reinstatement with backpay only if he could prove that he would not have been discharged had due process been observed.
 
 III.
 
 85
 In Part III of its opinion the Court notes that the District Court's backpay award against the defendant state officials is ambiguous as to whether it is against defendants in their official capacity or in their individual capacity. The Court concludes that it would be inappropriate to make any determination and therefore does not reach the Eleventh Amendment issue raised by the backpay award. I believe that such an award, whether it is against the defendant state officials in their official capacity or in their individual capacity, violates the Eleventh Amendment. Thus, in my view, the Court's decision not to reach the merits of this properly raised issue is an abdication of our judicial function and only postpones the inevitable to another panel on another appeal.
 
 
 86
 Clearly an award of backpay against defendants in their official capacity would be barred by the Eleventh Amendment. See Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). In Edelman, the Supreme Court rejected the proposition "that any form of relief may be awarded against a state officer, no matter how closely it may in practice resemble a money judgment payable out of the state treasury, so long as the relief may be labeled 'equitable' in nature." Id. at 666, 94 S.Ct. at 1357. The Eleventh Amendment prohibits an award against state officials in their official capacity if "[i]t is measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials." Id. at 668, 94 S.Ct. at 1358. That would be the situation presented here if backpay were awarded against defendants in their official capacity.
 
 
 87
 Likewise, Skeets cannot obtain backpay against defendants in their individual capacity, since only the State is responsible for backpay. See Burt v. Board of Trustees, 521 F.2d 1201 (4th Cir.1975); Dwyer v. Regan, 777 F.2d 825 (2d Cir.1985), modified, 793 F.2d 457 (2d Cir.1986). Just as in the case of reinstatement, defendants would have the authority to order backpay only in their official capacity. This, however, would be barred by the Eleventh Amendment under Edelman and Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945) (stating that "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its [Eleventh Amendment] immunity from suit even though individual officials are nominal defendants"). The defendants could be liable in their individual capacity for damages only, of which lost wages, or backpay, might be a component. But Skeets in his amended complaint dropped his claim for damages against the defendants in their individual capacity.
 
 
 88
 In Burt v. Board of Trustees, the plaintiff school teacher alleged that she was discharged without procedural due process, and sought compensatory damages and reinstatement with backpay. Before trial, the plaintiff dismissed her claim for damages. The district court construed the remainder of her claim as equitable. The court found a procedural due process violation, and awarded backpay against the defendants. On appeal the Fourth Circuit noted that the district court's order and judgment were "ambiguous as to whether the named defendants were sued in their official or individual capacities." 521 F.2d at 1204. The court then stated:
 
 
 89
 Since the named defendants possessed the power to reinstate and cause disbursement of back pay from public funds only in their official capacities ... any judgment, to be consistent with the initial characterization of the action as "equitable," must necessarily run against defendants as officials. Private citizens are not empowered to reinstate or order back pay out of school board or county funds.
 
 
 90
 Id.
 
 
 91
 In Dwyer v. Regan, the plaintiff, a state employee, alleged that the defendant's actions effectively deprived him of a property right to continued employment without procedural due process. Unlike Skeets, however, the plaintiff there sought both equitable relief (reinstatement with backpay) and damages against the defendant in both his official and individual capacities. The district court had dismissed the plaintiff's complaint for failure to state a claim upon which relief could be granted. On appeal the defendant contended that the plaintiff's claim, though nominally against the individual defendant, was in reality an action against the State and therefore was barred by the Eleventh Amendment. The Second Circuit agreed that the claim for backpay was barred by the Eleventh Amendment, but that his claims for damages and reinstatement were not barred. 777 F.2d at 835.
 
 
 92
 After first holding that the claim for reinstatement was not barred by the Eleventh Amendment (since it was the sort of purely prospective injunctive relief permitted under Edelman ), the Second Circuit stated:
 
 
 93
 In contrast, [plaintiff's] claim for backpay seeks "the payment of ... money which [he contends] should have been paid, but was not." If these sums should have been paid, they should have been paid by the State, not by [the defendant] in his individual capacity, and an award of backpay would necessarily have to be satisfied from State funds. Thus, [the plaintiff's] backpay claim is a claim for "a retroactive award which requires the payment of funds from the state treasury," and is barred by the Eleventh Amendment, absent a waiver of immunity by the State....
 
 
 94
 [The plaintiff's] request for compensatory ... damages stands on different footing from his request for backpay. The complaint asserts claims against [the defendant] in both his official and his individual capacities, and while we are aware of no theory that could render [the defendant] individually liable for [the plaintiff's] backpay, such is not the case with respect to the claim for damages. While [the defendant] had no duty in his individual capacity to pay [the plaintiff's] salary, he did have a duty not to deny [the plaintiff] his federally protected right to due process. Thus, if [the plaintiff] can establish that he [was denied procedural due process], there is no Eleventh Amendment impediment to his recovering damages for that denial from [the defendant].
 
 
 95
 Id. at 836-37 (citing Edelman, 415 U.S. at 677, 94 S.Ct. at 1362, and Ford Motor Co. v. Department of Treasury, 323 U.S. at 464, 65 S.Ct. at 350).
 
 
 96
 I agree with the reasoning of these courts. Backpay, by definition, represents an amount due an individual from his employer for the salary he should have received but did not because of an unlawful discharge. An award of backpay in this case would represent the amount owed Skeets by the State of Arkansas as though Skeets had remained on the State payroll since April 10, 1979. "The funds to satisfy the award in this case must inevitably come from the general revenues of the State of [Arkansas], and thus the award resembles far more closely the monetary award against the State itself than it does the prospective relief awarded in Ex parte Young [209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) ]." Edelman, 415 U.S. at 665, 94 S.Ct. at 1356 (citation omitted). Thus, though the Court's award nominally runs against the defendants in their individual capacity, it effectively "seek[s] to impose a liability which must be paid from public funds in the state treasury [and therefore] is barred by the Eleventh Amendment." Id. at 663, 94 S.Ct. at 1355. Thus, under either interpretation of the District Court's judgment--whether against defendants in their official capacity or in their individual capacity-- any award of backpay here is precluded by the Eleventh Amendment.
 
 
 97
 Had Skeets sought compensatory damages from the defendants in their individual capacity, his recovery could have included his lost wages (or backpay), assuming he could have satisfied the Carey rule of causation. It seems apparent to me that Skeets dropped his claim for damages for the very reason that Carey would have required him to prove that he would not have been discharged if he had received due process. But Skeets did not seek damages; he sought backpay, and thus his case founders on the rock of Eleventh Amendment immunity.
 
 
 98
 I would reverse the judgment of the District Court.
 
 
 
 *
 The Honorable WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation
 
 
 [1]
 The Honorable HENRY WOODS, United States District Judge for the Eastern District of Arkansas
 
 
 [2]
 Appellants assert that for Skeets to have an expectation to continued employment there must have been some substantive limitation on or condition precedent to the employer's right to discharge the employee. As authority for this proposition, appellants cite our recent decision in Payne v. Ballard, 761 F.2d 491 (8th Cir.1985). However, Payne is inapposite. In Payne the employer had complied with the grievance procedures. The language in which we stated that there must be "an undertaking * * * not to discharge the employee for a certain fixed period of time * * *" had to do with the discharged teacher's claimed property interest in a teacher's certificate, not in the grievance procedures. See id. at 493
 
 
 [3]
 The dissent's statement that Skeets has failed to state a claim of an alleged liberty interest is patently obiter dictum. See infra at 781 n. 2
 
 
 [4]
 Appellants rely on Birdwell v. Hazelwood School District, 491 F.2d 490 (8th Cir.1974). In Birdwell, the discharged employee failed to appear at a scheduled hearing of which he had notice. Id. at 494-95. Such is not the case here. At no point was Skeets provided a due process hearing
 
 
 [1]
 The Court also tries to reconcile this case with Hogue by finding that there in fact was some significant substantive restriction on defendants' discretion. The Court states, "That is, the grievance procedures, by virtue of the fact that a grievance advances to the next step if the Department fails to provide the required process, amount to a restriction on agency discretion which the Hogue court found to be necessary to trigger a sufficient property interest." Ante at 772. This, however, is a non sequitur. The fact that Skeet's grievance automatically may advance to the next step in the grievance process in no way restricts defendants' discretion. Under Arkansas law, defendants may discharge Skeets at any time (and at any step in the grievance process) for any reason and without cause. I see in that no significant substantive restriction on agency discretion. I believe it is abundantly clear that the grievance procedures here are entirely procedural and create no substantive right to continued employment
 
 
 [2]
 Because the District Court found that Skeets had a property interest, it did not address his "liberty" interest claim. Skeets, 609 F.Supp. at 797 n. 1. That claim clearly lacks substance. In order to establish a cognizable "liberty" interest, Skeets must allege that the reasons for his discharge were substantially false, that they stigmatized him and harmed his reputation, and that defendants made the reasons public. See Codd v. Velger, 429 U.S. 624, 627-28, 97 S.Ct. 882, 883-84, 51 L.Ed.2d 92 (1977) (per curiam); Hogue, 791 F.2d at 1322; Payne v. Ballard, 761 F.2d at 493. Skeets has made no such allegations. The extent of the allegations in his amended complaint regarding his "liberty" interest claim state in conclusory fashion that "Plaintiff had a reasonable expectation that his liberty interests (including the right to enjoyment of his good name, reputation, honor and integrity) would be preserved until such time as he was afforded the due process rights provided by the rules and regulations of the Arkansas State Highway Department and by the Constitutions and laws of the United States and the State of Arkansas." Amended Complaint p 6(b), Record at 16. Thus, insofar as any alleged "liberty" interest is concerned, Skeets's amended complaint fails to state a claim upon which relief may be granted