### Stella HODGE, by her Personal Guardian, Darlene SKIFF, Plaintiff,

v.

### Donald R. HODGE and Jim J. Austin, Defendants.

### No. 98–CV–0737.

United States District Court, N.D. New York.

Jan. 4, 1999.

Tobin and Dempf, Albany, NY, Kevin A. Luibrand, of counsel, for Plaintiff.

Castillo & Siegel, Albany, NY, Colleen H. Whalen, of counsel, for Defendants.

### MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

The present action arises out of a complaint filed on May 5, 1998 by Stella Hodge, through her personal guardian, Darlene Skiff, against Donald Hodge and Jim Austin, alleging, inter alia, fraud and conversion of certain marital assets shared by Stella and Donald Hodge.[1] Donald Hodge now moves pursuant to Fed. R. Civ. Proc. 12(b)(2) to dismiss plaintiff's com-

---

**1.** On August 13, 1998, after plaintiff consented to the dismissal of the action with respect to Jim Austin, this Court ordered that the complaint be dismissed with respect to Austin pursuant to Fed. R. Civ. Proc. 12(b)(2).

plaint for lack of personal jurisdiction, or in the alternative, to dismiss plaintiff's fifth cause of action alleging contempt of court. Defendant further moves for an extension of time to file a third-party complaint against Darlene Skiff.

## I. Background

In considering a motion to dismiss, the Court accepts as true the factual allegations in the Complaint. *See Dwyer v. Regan,* 777 F.2d 825, 828–29 (2d Cir.1985). Those allegations follow.

Plaintiff Stella Hodge and defendant Donald Hodge were married in 1958 and lived most of their married life in Florida. Around June 1995, while plaintiff resided in Florida, defendant retained Jim Austin, an attorney, to execute Stella Hodge's Last Will and Testament and a Power of Attorney in favor of the defendant over his wife's financial affairs and medical care, as plaintiff was apparently suffering from dementia and the onset of Alzheimer's disease. Plaintiff alleges that both the defendant and Austin, aware of her condition and that she lacked the requisite mental capacity, fraudulently induced the plaintiff to execute these documents. Thereafter, defendant and Austin allegedly falsified documents and fraudulently transferred plaintiff's assets, located in New York and Florida, to the defendant.

On or about August 1995, plaintiff left Florida and came to New York to live with her daughter, Darlene Skiff. After caring for plaintiff for about one month, Ms. Skiff placed her mother in a nursing home, and thereafter, in a geriatric home when she entered the advanced stages of Alzheimer's disease.

In an order dated January 30, 1998, Honorable George B. Ceresia, Jr., Justice of the New York Supreme Court, Rensselaer County, appointed Ms. Skiff personal guardian of plaintiff, and ordered defendant, inter alia, to reimburse Ms. Skiff for expenditures related to her care of plaintiff, and fund an account providing for the payment of plaintiff's living and medical expenses. Plaintiff alleges that defendant has failed to comply with that order,[2] and has removed funds from plaintiff's burial account for his own use.

Defendant moves to dismiss plaintiff's complaint for lack of personal jurisdiction, or, in the alternative, to dismiss plaintiff's claim sounding in contempt of court. Defendant also requests an extension to file a third-party complaint against Ms. Skiff.[3]

## II. DISCUSSION

### A. Personal Jurisdiction

Defendant moves under FED. R. CIV. P. 12(b)(2) to dismiss the Amended Complaint against him for lack of personal jurisdiction.

In the present case, plaintiff alleges that defendant is a partner in a business located in Ballston, New York, and regularly participated in that business at the time plaintiff's injuries giving rise to her claims arose. Furthermore, plaintiff alleges that some of the assets giving rise to her conversion claim against the defendant were located in New York.

In response, defendant asserts that the complaint fails to allege personal jurisdiction over him because: (1) the alleged wrongful acts did not occur in New York to ·trigger New York's long-arm statute; and (2) defendant did not, and does not, transact any business within New York state.[4]

---

**2.** Plaintiff's fifth cause of action alleges defendant's willful failure to comply with the terms of Justice Ceresia's order. In their papers, the parties characterize this claim as contempt of court. Defendant moves this Court to dismiss this claim on the ground that any violations of that order should be addressed by the court that issued the order. *See* Def. Mem. of Law at 5.

**3.** Defendant does not, however, indicate what allegations would be raised in his third-party complaint.

**4.** Defendant further relies on the report issued Robert M. Jacon, Esq., the Court Evalu-

■ Defendant's motion to dismiss based on jurisdictional grounds is untimely, and is therefore denied. The Uniform Pretrial Scheduling Order ("Scheduling Order"), filed September 2, 1998, provides that:

Jurisdictional motions are to be *filed* within sixty (60) days of the date of this Order following the procedures set forth in Local ·Rule ' 7.1(b)(1) and are made returnable before the assigned District Judge. Note that such motions should be *served* at least 35 days prior to this deadline in order for the "motion package" to be filed in a · timely manner. (Emphasis in original).

The Scheduling Order further indicates that the June 1, 1999 deadline for filing non-dispositive and dispositive motions specifically excludes venue and jurisdiction motions. Thus, any jurisdictional motions were required to be filed with the Court by November 2, 1998. Defendant, however, filed the instant motion on November 23, 1998, approximately three weeks after the prescribed deadline. Fatal to defendant's motion is that the Scheduling Order was not amended, and defendant did not seek leave of court to raise issues regarding personal jurisdiction after the time permitted under the Scheduling Order. Thus, defendant's motion to dismiss plaintiff's complaint for lack of personal jurisdiction is denied.

### B. Contempt of Court Claim

Plaintiff's fifth cause of action alleges defendant's willful violation of Justice Ceresia's order in the state court guardianship proceeding. Defendant moves to dismiss this claim on the ground that "[t]he determination of whether or not defendant [ ] has violated a court order is 'clearly better suited for the court whose

order allegedly has been violated.' " Def. Mem. of Law at 5 (citation omitted). In opposition, plaintiff argues that the contempt of court claim is properly before the court pursuant to its diversity jurisdiction, and that "all three causes of action asserted against the defendant—fraud, conversion, and contempt—are interrelated and involve the same issues of fact." Pl. Mem. of Law at 10.

■ The doctrines of comity and federalism favor remanding plaintiff's cause of action alleging contempt of court to the state court which issued the order underlying plaintiff's claim. *See International Union, UMWA v. Bagwell,* 512 U.S. 821, 831, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994) ("[C]ivil contempt proceedings leave the offended judge solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct."); *Juidice v. Vail,* 430 U.S. 327, 335, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Waffenschmidt v. MacKay,* 763 F.2d 711, 716 (5th Cir.1985) ("Enforcement of an order through a contempt proceeding must occur in the issuing jurisdiction because contempt is an affront to the court issuing the order."), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 794, 88 L.Ed.2d 771 (1986); FED. R. CIV. P. 4.1 Advisory Committee Notes ("Contempt proceedings, whether civil or criminal, must be brought in the court that was allegedly defied by a contumacious act."). As the Supreme Court noted in *Juidice:*

The[ ] principles [of comity and federalism] apply to a case in which the State's contempt process is involved. A State's interest in the contempt process, through which it vindicates the regular operation of its judicial system, so long

ator appointed in the state action, which "specifically stated that the allegations indicating any improper transfer of assets of the marital residence and various bank accounts was 'simply erroneous.' " Def. Reply Mem. of Law at 2. Because defendant's motion moves to dismiss the complaint based on lack of personal jurisdiction pursuant to · Fed.

R.Civ.P. 12(b)(2), defendant's arguments regarding the propriety of the challenged transfers of plaintiff's assets do not implicate an issue of personal jurisdiction; rather, it challenges the sufficiency of the allegations in the complaint which has not been properly noticed before the Court at this time.

as that system affords the opportunity to pursue federal claims within it, is surely an important interest. Perhaps it is not quite as important as the State's interest in the enforcement of its criminal laws, or even its interest in the maintenance of a quasi-criminal proceeding.... But we think it is of sufficiently great import to require application of the principles of those cases. The contempt power lies at the core of the administration of a State's judicial system. Whether disobedience of a court-sanctioned subpoena, and the resulting process leading to a finding of contempt of court, is labeled civil, quasi-criminal, or criminal in nature, we think the salient fact is that federal-court interference with the State's contempt process is "an offense to the State's interest ... likely to be as great as it would be were this a criminal proceeding."

430 U.S. at 335–36, 97 S.Ct. 1211 (citations omitted)

Because plaintiff's contempt of court claim directly implicates the integrity of the state court that issued the order allegedly violated by defendant, and would interfere with the orderly administration of justice of that court, the Court remands the contempt claim to the state court to decide whether the state court order was violated, and if so, how such violation should be remedied.

### C. Leave to File and Serve a Third-Party Complaint

Lastly, defendant seeks leave for an extension of time to file a third-party complaint against Ms. Skiff. The Scheduling Order, however, required the amendment of all pleadings and the joinder of all parties to be filed by November 1, 1998. Defendant contends that he did not bring his third-party complaint against Ms. Skiff "in the interest of effectuating judicial economy" since such an action would be unnecessary if the Court granted defendant's motion to dismiss based on a lack of personal jurisdiction. *See* Def. Mem. of Law

at 6. Plaintiff counters by arguing that an extension of time is not warranted since defendant's failure to act before "the expiration of time is solely the fault of the defendant." Pl. Mem. of Law at 12.

Because third-party actions under Fed. R.Civ.P. 14 are generally freely granted, see *Middle Market Fin. Corp. v. D'Orazio*, 1998 WL 872412, at *1 (S.D.N.Y. December 15, 1998) ("Timely motions for leave to implead non-parties should be freely granted to promote [judicial] efficiency unless to do so would prejudice the plaintiff, unduly complicate the trial, or would foster an obviously unmeritorious claim.") (quoting *Shafarman v. Ryder Truck Rental, Inc.*, 100 F.R.D. 454, 459 (S.D.N.Y.1984)); *Hicks v. Long Island R.R.*, 165 F.R.D. 377, 379 (E.D.N.Y.1996) (same), defendant may seek leave from the Magistrate Judge *no later than January 6, 1999* to file a third-party complaint.

### III. CONCLUSION:

For all of the foregoing reasons, defendant Donald Hodge's motion to dismiss the Complaint is **DENIED**, and it is further

ORDERED,

that plaintiff Stella Hodge's fifth cause of action alleging violation of a state court order be **REMANDED** to the state court, and it is further

ORDERED,

that defendant may seek leave from the Magistrate Judge **no later than January 6, 1999** to file a third-party complaint.

**IT IS SO ORDERED.**